FARMERS & TRADERS STATE BANK, Plaintiff-Appellant, *v.* J. THOMAS JOHNSON, Director, Department of Revenue, Defendant-Appellee.

Fourth District   No. 4—83—0415

Opinion filed January 11, 1984.

Mariann Pogge-Strubing, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Fredric D. Tannenbaum, Assistant Attorney General, of counsel), for appellee.

JUSTICE TRAPP delivered the opinion of the court:

Farmers & Traders State Bank (Taxpayer) brought this action to review the 1981 assessment of a deficiency by the Illinois Department of Revenue (Department). Taxpayer challenges the Department's inclusion of interest earned from 1975 through 1977 on certain Government National Mortgage Association (GNMA) securities (Ginnie Maes) and on Federal National Mortgage Association (FNMA) securities (Fannie Maes). The trial court upheld the Department's position and this appeal followed.

The issues on appeal are: (1) Whether the interest earned on Ginnie Maes is constitutionally immune or statutorily exempt from State taxation; (2) whether the interest earned on Fannie Maes is constitutionally immune or statutorily exempt from State taxation; (3) whether the Department's hearing procedure denied Taxpayer due process of law since the hearing examiner also represented the Department; and (4) whether the burden of proof was improperly placed on Taxpayer at the administrative hearing.

On July 23, 1980, the Department issued a notice of deficiency to Taxpayer in the amount of $12,777.73. Taxpayer filed a protest contesting disallowance of the following as base income subtractions: (1) For the year 1975, $73,600.02 interest earned on Fannie Mae certificates and $5,280.28 in interest earned on Ginnie Mae certificates; (2) in 1976, $125,493.29 in interest earned on Fannie Mae certificates and $7,091.36 in interest earned on Ginnie Mae certificates; and (3) in 1977, $99,087.51 in interest earned on Fannie Mae certificates and

$16,623.86 in interest earned on Ginnie Mae certificates. Between December 1980 and April 1981, the appointed hearing officer sent six letters to Taxpayer delineating the authorities and documents on which the Department would rely in the administrative hearing.

On April 29, 1981, the administrative hearing was opened. Prior to continuing the hearing on plaintiff's motion, the hearing officer presented some 36 exhibits on the record, including case authorities considered and Department records pertaining to Taxpayer. The proceeding was continued on May 20, 1981.

On May 20, 1981, the hearing officer stated the Department had presented a *prima facie* case by admitting certain exhibits into evidence and taking official notice of others. Taxpayer moved for a dismissal on constitutional and procedural grounds. Dennis Little, Taxpayer's representative, testified on Taxpayer's behalf.

On November 4, 1981, the hearing officer signed his report ruling against Taxpayer on the issues raised. On December 2, 1981, the Director of Revenue issued a decision affirming the hearing officer's report. On January 5, 1982, Taxpayer filed this suit. The trial court upheld the agency's decision.

■ The first question raised by this appeal is whether the interest earned on Ginnie Mae certificates issued under 12 U.S.C. sec. 1721(g) (1976), guaranteed by GNMA and backed by the full faith and credit of the United States, is constitutionally immune from State taxation or constitutes "other obligations of the United States" and is therefore exempt from State taxation under 31 U.S.C. sec. 742 (1976). We find that the interest earned is not exempt for either reason.

The question of whether Ginnie Mae certificates themselves are subject to State taxation was resolved against the taxpayer in *Montgomery Ward Life Insurance Co. v. Department of Local Government Affairs* (1980), 89 Ill. App. 3d 292, 411 N.E.2d 973. Therein the court described the operation of the Mortgage Backed Securities Program: A financial institution or a mortgage servicing company assembles or acquires a pool of government insured or guaranteed mortgages. GNMA enters into a "Guaranty Agreement" with that party (issuer). GNMA agrees to guarantee timely payments of principal and interest and the issuer agrees to remit in a timely manner all payments required by the terms of the securities. The private issuer is primarily liable to make the payments required by the securities and must proceed with due diligence in collecting the proceeds from the pool. When amounts equal to scheduled payments are not collected, the issuer has a duty to advance from its own funds amounts equal to the

payments which should have been collected. This private issuer actively manages and controls the pool of mortgages backing the securities and is paid a fee for its services in administering the pool based on and payable from the interest portion of each monthly installment. If the issuer fails to make timely payments, the security holder's sole recourse is against GNMA. However, GNMA may treat the issuer's failure to make required payments as an event of default under the Guaranty Agreement and has the option of extinguishing the issuer's interest in the pooled mortgages and becoming owner of those mortgages subject only to the unsatisfied rights of the security holders. See *New York Guardian Mortgagee Corp. v. Cleland* (S.D.N.Y. 1979), 473 F. Supp. 409; and *New York Guardian Mortgagee Corp. v. Cleland* (S.D.N.Y. 1979), 473 F. Supp. 422.

The *Montgomery Ward* court reasoned as follows:

"Under the rule first enunciated in *M'Culloch v. Maryland* (1819), 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579, all properties, functions and instrumentalities of the Federal government are immune from State and local taxation. (See *Smith v. Davis* (1944), 323 U.S. 111, 113, 89 L. Ed. 107, 110, 65 S. Ct. 157, 158-59.) To make this implied constitutional immunity explicit, Congress has provided for the exemption from State and local taxes for certain written obligations in 31 U.S.C. sec. 742 (1976). That section provides:

'Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes.'

The basis of this statutory exemption is 'the fact that a tax upon the obligations of the United States is virtually a tax upon the credit of the Government, and upon its power to raise money for the purpose of carrying on its civil and military operations.' *Hibernia Savings & Loan Society v. City and County of San Francisco* (1906), 200 U.S. 310, 313, 50 L. Ed. 495, 496, 26 S. Ct. 265, 266.

\*\*\*

The credit instrumentalities of the United States recognized

by the Supreme Court as constitutionally exempt from State and local taxation have been characterized by '(1) written documents, (2) the bearing of interest, (3) a binding promise by the United States to pay specified sums at specified dates and (4) specific Congressional authorization, which also pledged the faith and credit of the United States in support of the promise to pay.' (*Smith v. Davis* (1944), 323 U.S. 111, 114-15, 89 L. Ed. 107, 110, 65 S. Ct. 157, 159.) Such credit instrumentalities are issued in the exercise of the power of Congress to borrow money on the credit of the United States to finance an essential governmental function." 89 Ill. App. 3d 292, 296-97, 411 N.E.2d 973, 976. See also *Smith v. Davis* (1944), 323 U.S. 111, 119, 89 L. Ed. 107, 113, 65 S. Ct. 157, 160.

In *Montgomery Ward*, the court found that since the private issuer is primarily liable to make the monthly interest payments and ultimately repay the principal on Ginnie Maes, payment of the obligation by GNMA is contingent and, as such, indirect and speculative. In addition, the court found that the Ginnie Maes were not issued by a government agency to borrow money on the credit of the United States to finance an essential governmental function but were guaranteed by GNMA to facilitate their marketability and encourage investment in them by private parties. The court concluded the Ginnie Mae certificates are not within the category of obligations issued by the Federal government where an immediate and direct debt is incurred by the United States which it alone makes a binding promise to pay and, therefore, are not within the meaning of "other obligations" in 31 U.S.C. sec. 742 (1976).

Taxpayer urges that 31 U.S.C. sec. 742 (1976) codified only a portion of the holding of *M'Culloch v. Maryland* (1819), 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579, and that the interest earned on Ginnie Maes is constitutionally immune from State taxation under the *M'Culloch* decision. *M'Culloch* involved a tax enacted by Maryland on the issuance of bank notes, essentially a discriminatory tax on a national bank in the jurisdiction. The Supreme Court found a connection between the bank and the powers granted to lay and collect taxes, borrow money, regulate commerce, declare and conduct a war, and raise and support armies and navies. The court held that the Maryland tax interfered with the exercise of valid Federal action and that the State did not have power to tax a valid Federal instrumentality which would subject the operations of the Federal government to State control. The decision carried a limitation on its reach, however:

"This opinion does not deprive the states of any resources

which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the state, *nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution,* in common with other property of the same description throughout the state. But this is a tax on the operations of the bank, and is, consequently, a tax on the operation of an instrument employed by the government of the Union to carry its powers into execution. Such a tax must be unconstitutional." (Emphasis added.) (17 U.S. (4 Wheat.) 316, 436-37, 4 L. Ed. 579, 609.)

As the *Montgomery Ward* court found the Ginnie Mae certificates were neither constitutionally immune from State taxation nor exempt therefrom under 31 U.S.C. sec. 742 (1976), we hold that the interest earned on Ginnie Mae certificates is likewise neither constitutionally immune from State taxation nor exempt under 31 U.S.C. sec. 742 (1976).

■ We next consider Taxpayer's argument that the interest earned on Fannie Mae certificates is constitutionally immune from State taxation or constitutes "other obligations of the United States" and are therefore exempt from the State taxation under 31 U.S.C. sec. 742 (1976). The analysis applied above in considering the interest earned on Ginnie Mae certificates is also applicable here. Congress created FNMA intending the agency to operate as a reserve market for mortgage investors and to facilitate the distribution of the government capital available for home mortgage financing. (12 U.S.C. sec. 1716 (1976).) In 1968, Congress transferred ownership of FNMA to the private sector. (12 U.S.C. sec. 1718 (1976).) The Department relies on the language of title 12 U.S.C. sec. 1719(b) (1976) to demonstrate congressional intent not to guarantee FNMA obligations, including Fannie Mae certificates:

"The [FNMA] shall insert appropriate language in all of its obligations issued under this section clearly indicating that such obligations, together with the interest thereon, are not guaranteed by the United States and do not constitute a debt or obligation of the United States or of any agency or instrumentality thereof other than the corporation." (12 U.S.C. sec. 1719(b) (1976).)

Title 12 U.S.C. sec. 1719(e) (1976), pertaining to FNMA subordinated or convertible obligations, mandates that such obligations carry similar language indicating that such obligations, together with the interest thereon, are guaranteed solely by the corporation.

Considering the characteristics of the instrumentalities which are exempt from State taxation, discussed in *Smith v. Davis* (1944), 323 U.S. 111, 89 L. Ed. 107, 65 S. Ct. 157, Fannie Maes do not carry a binding promise by the United States to pay specified sums at specified times. Neither do Fannie Maes have congressional authorization pleading the full faith and credit of the United States in support of the promise to pay. Indeed, the language of 12 U.S.C. sec. 1719(b) (1976) reflects congressional intent to the contrary. Moreover, Fannie Maes are not used to secure credit for the government, but to attract private capital so that government credit would not be necessary. *Montgomery Ward*; 12 U.S.C. sec. 1721(b) (1976).

■ The language of title 12 U.S.C. sec. 1719(d) (1976), regarding mortgage-backed securities, referred to by the court in *Montgomery Ward*, must be considered in conjunction with the aforementioned subsections. Subsection (d) provides: "Securities issued by the corporation under this subsection shall, to the same extent as securities which are direct applications of or obligations guaranteed as to principal and interest by the United States, be deemed to be exempt securities within the meaning of laws administered by the Securities and Exchange Commission." We conclude that this language compares securities issued under subsection (d) to securities which *are* direct obligations of, or obligations guaranteed as to the principal and interest by, the United States, for the limited purpose of laws administered by the Securities and Exchange Commission.

We hold that the interest earned on Fannie Maes is not exempt from State taxation under 31 U.S.C. sec. 742 (1976). Likewise, the previously quoted passage of the *M'Culloch* decision suggests that that case does not extend to the interest earned on Fannie Mae certificates. We therefore hold that the interest earned on these Fannie Mae certificates is not constitutionally immune from State taxation.

■ Taxpayer next asserts that the administrative hearing procedure, wherein the hearing officer also represented the Department, violated Taxpayer's due process rights. The Department's hearing procedures have withstood constitutional challenge on due process grounds in *Sundstrand Corp. v. Department of Revenue* (1975), 34 Ill. App. 3d 694, 339 N.E.2d 351, *Lakeland Construction Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 1036, 379 N.E.2d 859, *Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132, 421 N.E.2d 1030, and *American Acoustics & Plastering Co. v. Department of Revenue* (1982), 107 Ill. App. 3d 616, 437 N.E.2d 419. We deem these cases controlling.

■ Finally, Taxpayer objects that the Department's decision up-

held the hearing officer's ruling that the burden of proving a deduction or exclusion in a civil tax case is on the taxpayer. Taxpayer argues that he is exempt as a matter of right under *M'Culloch* and the supremacy clause of the constitution, rather than as a matter of legislative grace by statutory exemption and, therefore, he has no burden to prove an exemption. Taxpayer's protest raises a question of law, not fact. A reviewing court is not bound by the conclusions of law of the department or the trial court. (*Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230.) The interest on Ginnie Mae and Fannie Mae securities either is immune or exempt from taxation or it is not.

Section 904(a) of the Illinois Income Tax Act provides that the findings of the department regarding a deficiency on the part of the taxpayer shall be *prima facie* evidence. (Ill. Rev. Stat. 1981, ch. 120, par. 9—904(a).) Taxpayer was afforded advance notice of authorities and documents on which the Department relied at hearing and was allowed to present its evidence and arguments. We find no error in this case.

Affirmed.

GREEN and MILLER, JJ., concur.