BANK ONE DAYTON, N.A. ET AL., APPELLANTS, *v.*
LIMBACH, TAX COMMR., APPELLEE.

[Cite as Bank One Dayton, N.A. *v.* Limbach (1990), 50 Ohio St. 3d 163.]

(No. 89-284—Submitted January 17, 1990—Decided April 18, 1990.)

*Bricker & Eckler, Charles F. Glander, Edgar L. Lindley* and *Mark A. Engel,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard C. Farrin,* for appellee.

ALICE ROBIE RESNICK, J. Appellants assert two propositions of law, the first of which is that Ohio's corporate franchise tax, R.C. Chapter 5733, violates Section 3124(a), Title 31, U.S. Code, and the Borrowing and Supremacy Clauses of the United States Constitution. Furthermore, appellants assert that R.C. 5733.05(A) discriminates against federal obligations by including them in a financial institution's net worth tax base, while excluding certain other assets held by a financial institution. The second proposition appellants present is that R.C. 5733.06 violates the Equal Protection Clauses of both the Ohio and United States Constitutions by imposing a tax on financial institutions at a higher rate than that which it imposes on other corporations.

## I

In their first proposition of law, appellants contend that the Ohio franchise tax on financial institutions violates the Borrowing and Supremacy Clauses of the United States Constitution, and Section 3124(a), Title 31, U.S. Code. To support their contention, appellants assert that the franchise tax set forth in R.C. Chapter 5733 is actually a property tax disguised as a franchise tax. We begin our analysis by reviewing both the state and federal statutes that are at issue.

R.C. 5733.01(A) states that "[t]he tax provided by this chapter for domestic corporations shall be the amount charged against each corporation organized for profit under the laws of this state * * * for the privilege of exercising its franchise during the calendar year in which such amount is payable * * *." R.C. 5733.06 is the operative statute which levies the tax on corporations. A corporation other than a financial institution must first determine the value of its issued and outstanding shares of stock under the net income method of R.C. 5733.05(B) and multiply the first $25,000 in value by 5.1 percent, and the excess value over $25,000 by 9.2 percent. The corporation then must add these two amounts together, which total is the calculated tax by the net income method. The corporation then ascertains the value of the issued and outstanding shares of stock determined under the net worth method of R.C. 5733.05(A), and multiplies this value by 5.82 mills. This is the tax calculated on the net worth method. The greater of the two tax calculations is the amount of the franchise tax due.

However, R.C. 5733.06(D) taxes financial institutions at fifteen mills times the value of the issued and outstanding shares of stock as determined under the net worth method. R.C. 5733.06 does not require or allow a financial institution to calculate a tax amount under the net income method.

R.C. 5733.05(A) is used to calculate the value of the issued and outstanding shares of stock of a corporation as being "[t]he total value, as shown by the books of the company, of its capital, surplus, whether earned or unearned, undivided profits, and reserves * * *." This figure is a base or measure of the franchise tax liability, and is commonly referred to as the net worth tax base. R.C. 5733.05(A)(5) excludes from this value the corporation's investments in eighty-percent-owned public utilities, eighty-percent-owned insurance companies, and twenty-five-percent-owned financial institutions. Division (A)(6) excludes land devoted exclusively to agricultural use in Ohio. Other exemptions from the Ohio corporate tax base are as follows: R.C. 5709.25 exempts certified pollution control facilities; R.C. 5709.35 exempts certified fuel conversion facilities; R.C. 5709.50 exempts certified energy conversion, solid waste energy conversion, and thermal efficiency improvement facilities; R.C. 5709.65 exempts certified enterprise zone property; and

R.C. 6111.31 exempts certified water pollution control facilities.

The foregoing is a brief review of the Ohio corporate franchise tax. We now turn to an analysis of the federal statutory and constitutional provisions that are at issue. Pursuant to the Borrowing and Supremacy Clauses of the federal Constitution, "* * * States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government. * * *

"* * * So long as the tax is not directly laid on the Federal Government, it is valid if nondiscriminatory * * * or until Congress declares otherwise. * * *" *United States* v. *Cty. of Fresno* (1977), 429 U.S. 452, 459-460. This is in accord with the constitutional rule of federal tax immunity first established in *McCulloch* v. *Maryland* (1819), 17 U.S. (4 Wheat.) 316. Furthermore, the United States Supreme Court has treated what is now Section 3124(a), Title 31, U.S. Code as being a restatement of this constitutional principle.[2] See *Memphis Bank & Trust Co.* v. *Garner* (1983), 459 U.S. 392, 397;

---

[2] The Supreme Court succinctly traced both the legislative history of Section 3124(a) and prior case law interpreting the statute in *American Bank & Trust Co.* v. *Dallas Cty.* (1983), 463 U.S. 855. The court stated as follows:

"Until 1959, Rev. Stat. § 3701, 31 U.S.C. § 742, provided, in pertinent part, that '[a]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority.' This Court consistently held that this language prohibited state taxes imposed *on* federal obligations, either directly, or indirectly as part of a tax on the taxpayer's total property or assets. See *Society for Savings* v. *Bowers,* 349 U.S. 143, 147-148 (1955). The Court also consistently held, however, that § 3701 did not prohibit nondiscriminatory taxes imposed on discrete property in-

terests such as corporate shares or business franchises, even though the value of that discrete interest was measured by the underlying assets, including United States obligations. * * * [Citations omitted.] Similarly, the Court interpreted Rev. Stat. § 3701 not to prohibit taxes imposed on a discrete transaction, such as an inheritance, even though the value of the inheritance was measured according to the value of the federal obligations transferred. * * * [Citation omitted.] In 1956, the Court observed that this formal but economically meaningless distinction between taxes on Government obligations and taxes on separate interests was 'firmly embedded in the law.' *Society for Savings* v. *Bowers,* 349 U.S., at 148.

"In 1959, Congress amended § 3701 by adding a second sentence: 'This exemption extends to every form of taxation that

*New Jersey Realty Title Ins. Co.* v. *Division of Tax Appeals* (1950), 338 U.S. 665, 672; *Missouri, ex rel. Missouri Ins. Co.* v. *Gehner* (1930), 281 U.S. 313, 321-322. Current Section 3124(a), Title 31, U.S. Code provides, in relevant part:

"Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except —

"(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and

"(2) an estate or inheritance tax."[3]

According to *American Bank & Trust Co.* v. *Dallas Cty.* (1983), 463 U.S. 855, 862, " * * * [u]nder the plain language of * * * [Section 3124(a)] the tax is barred regardless of its *form* if federal obligations must be considered,

either directly or indirectly, in *computing* the tax [except nondiscriminatory franchise taxes, nonproperty tax instead of franchise taxes, and estate and inheritance taxes]."[4] (Emphasis *sic*.)

Appellants argue that the corporate franchise tax is actually a property tax and therefore does not come within either of the two exceptions contained in Section 3124(a), Title 31, U.S. Code. Appellee responds that the franchise tax is a tax on the privilege of doing business in Ohio. Furthermore, appellee argues that the tax is measured by the value of federal obligations, and is not levied on the assets themselves.

The nature of a tax must be determined by its operation, rather than by its particular descriptive language. *Educational Films Corp. of America* v. *Ward* (1931), 282 U.S. 379, 387. Therefore, appellants contend that simply labeling the tax as a franchise tax does not accord the tax such status.[5] The United States Supreme Court, in *Educational Films*, de-

---

would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax,' with exceptions only for non-discriminatory franchise taxes or other nonproperty taxes, and for estate or inheritance taxes. Act of Sept. 22, 1959, Section 105(a), 73 Stat. 622. * * *" (Footnote omitted.) *Id.* at 858-859.

[3] Former Section 742, Title 31, U.S. Code technically applies to the refund claims for 1982, and Section 3124(a), Title 31, U.S. Code, which replaced Section 742 in 1982, applies to the 1983 and 1984 claims. All parties agree that the two versions do not materially differ.

[4] The court went on to state that:
"Prior to the 1959 amendment, franchise and estate and inheritance taxes measured by the value of federal obliga-

tions, like bank shares taxes, were upheld on the theory that the tax was levied on the franchise or the transfer of property, rather than on the ownership interest in the federal securities themselves. By expressly exempting franchise and estate and inheritance taxes from the amended 3701, Congress manifested its awareness that the new language would broaden significantly the prohibition as it had been construed by the courts. Congress must have believed that franchise and estate and inheritance taxes required federal obligations to 'be considered, directly or indirectly, in the computation of the tax'; otherwise, the specific exemptions for these taxes would have been superfluous. * * *" *American Bank & Trust Co., supra*, at 863-864.

[5] Appellants' argument seems to follow a famous quote traditionally attributed to Abraham Lincoln:

scribed the operation of a franchise tax as follows:

"If we look to the operation of the present statute, it is plain that it can have no application independent of the corporation's enjoyment of the privilege of exercising its franchise. If appellant had ceased to do business before November 1, 1929, it would not have been subject to any tax under this statute, although it had received, during its preceding fiscal year, income which the statute makes the measure of the tax. Since it can be levied only when the corporation both seeks or exercises the privilege of doing business in one year and has been in receipt of net income during its preceding fiscal year, the tax, whatever descriptive terms are properly applicable to it, obviously is not exclusively on income apart from the franchise." *Id.* at 388.

Likewise, this court has previously discussed the nature and operation of the Ohio corporate franchise tax, stating as follows:

"Similarly, the annual franchise tax levied on corporations is also a tax on the privilege of doing business in this state. R.C. 5733.01(A); *Woodland Gardens Apartments* v. *Porterfield* (1968), 16 Ohio St. 2d 56. Both the excise tax on public utilities and the franchise tax on corporations are levied on the exercise of a privilege and not on income, sales or receipts. Further, both taxes are based upon the results of an entire year of doing business and tax liability is not fixed until the end of that annual period * * *." *East Ohio Gas Co.* v. *Limbach* (1986), 26 Ohio St. 3d 63, 67, 26 OBR 54, 57, 498 N.E. 2d 453, 456.

In *Werner Machine Co.* v. *Dir. of Div. of Taxation* (1956), 350 U.S. 492, the Supreme Court approved a tax scheme which included the value of federal bonds in a corporation's net worth to determine New Jersey's franchise tax. Therein, the high court accepted the state supreme court's conclusion that the tax was not imposed directly on property, but was indeed a bona fide franchise tax. Furthermore, the United States Supreme Court stated that it had "* * * consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property. * * *" *Id.* at 494.

More recently, in *Garfield Trust Co.* v. *Dir. of Div. of Taxation* (1986), 102 N.J. 420, 508 A. 2d 1104, dismissed for want of substantial federal question (1986), 479 U.S. 925, the New Jersey Supreme Court approved the franchise tax considered in *Werner Machine, supra,* which had become, in *Garfield Trust Co.,* a net income base tax. The New Jersey Supreme Court in *Garfield Trust Co., supra,* cited with approval the Supreme Court's statement in *Werner Machine* that a franchise tax may be *measured by tax-exempt income or property* and still be a valid tax on the franchise and not on the property. *Id.* at 425, 508 A. 2d at 1107.

Appellants rely on *Dale Natl. Bank* v. *Commonwealth of Pennsylvania* (1983), 502 Pa. 170, 465 A. 2d 965, wherein the court held that a purported franchise tax was actually an invalid property tax. However, we do not find this case persuasive. There, the tax at issue had previously been a property tax, and four years after the tax year in question, the Pennsylvania

---

"If you call a tail a leg, how many legs has a dog? Five? No; calling a tail a leg don't make it a leg." Morley, The Shorter

Bartlett's Familiar Quotations (1953), at 218(d).

Legislature enacted a new section to the applicable statute, which declared that the property tax " 'shall be a tax for the privilege of doing business in this Commonwealth. * * *' " *Id.* at 176, 465 A. 2d at 968. The state legislature also attempted to make this language retroactive to the prior tax year.

The court in *Dale Natl. Bank, supra,* rejected this effort to salvage the property tax, reasoning that the state did not change the means of calculating the tax. Although that section "* * * would characterize the tax imposed * * * as a 'tax for the privilege of doing business,' it is clear that the tax imposed * * * was and continues to be a property tax identical in operation and effect to the tax invalidated in *American Bank * * *." Id.* Thus, Pennsylvania had merely characterized a property tax as a franchise tax. Appellants argue that this is exactly what Ohio has done in R.C. Chapter 5733, pointing to the legislative history of this code chapter. We disagree.

In this case, the Ohio General Assembly repealed the property tax and enacted a franchise tax. Appellants strenuously argue that the General Assembly had an improper motive for amending the corporate tax system in Ohio. However, motive is irrelevant in these types of situations. A state tax is examined by its operation and current effect. Based on the above analysis and reasoning, we hold that Ohio's corporate tax complies with Section 3124(a), Title 31, U.S. Code and is in fact a franchise tax.

This decision is consistent with case law from other jurisdictions. See *Liberty Mut. Ins. Co.* v. *Commr. of Revenue* (1989), 405 Mass. 352, 541 N.E. 2d 566; *Pacific First Fed. Sav. Banc* v. *Dept. of Rev.* (1989), 308 Ore. 332, 779 P. 2d 1033; *Dept. of Revenue* v. *First Union Natl. Bank* (Fla. 1987),

513 So. 2d 114, appeal dismissed (1988), 485 U.S. 949; *State Dept. of Assessments & Taxation* v. *Maryland Natl. Bank* (1987), 310 Md. 664, 531 A. 2d 294; *Centerre Bank of Crane* v. *Dir. of Revenue* (Mo. 1988), 744 S.W. 2d 754. In *Liberty Mut., supra,* the court continued to adhere to prior case law and rejected the argument that an excise tax as applied to insurance companies was a property tax. The court stated that:

" 'The label by which a tax is known should not control the constitutional principles by which it is judged.' *Aronson* v. *Commonwealth,* 401 Mass. 244, 248, 516 N.E. 2d 137 (1987), quoting *George S. Carrington Co.* v. *State Tax Comm'n,* 375 Mass. 549, 552 n. 3, 377 N.E. 2d 950 (1978). See *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 288, 97 S. Ct. 1076, 1083, 51 L. Ed. 2d 326 (1977). In *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.,* we carefully looked behind the labels of the State statute to determine whether the excise tax * * * was a nondiscriminatory franchise or other nonproperty tax which is permitted under Federal law, or whether it was a property tax forbidden by Federal law. * * *'' *Id.* at 355, 541 N.E. 2d at 568.

The court went on to hold that the tax was a valid franchise or other nonproperty tax, and thus within the parameters of Section 3124(a).

Next, appellants assert that even if the court holds that this tax is a franchise tax, it is invalid because it discriminates against federal obligations and in favor of other assets. Thus the question arises as to whether the tax qualifies as a "nondiscriminatory" franchise tax for purposes of Section 3124(a). Appellants contend that the tax discriminates on the basis of the assets included in the calculation of the net worth tax base. Essentially, appellants contend that by exempting the

value of other assets, the franchise tax discriminates against federal obligations by their inclusion in the tax base. The excluded assets include the following:

Stock in and debts of public utility and insurance companies which are at least eighty percent owned by the corporate taxpayer and stock in and debts of financial institutions which are at least twenty-five percent owned by the corporate taxpayer (R.C. 5733.05[A] [5]); land devoted exclusively to agricultural use in Ohio (R.C. 5733.05[A][6]); air or noise pollution control facilities (R.C. 5709.25); fuel conversion facilities (R.C. 5709.35); energy conversion facilities (R.C. 5709.50); property located in enterprise zones (R.C. 5709.65); and water pollution control facilities (R.C. 6111.31).

In *Memphis Bank, supra,* the United States Supreme Court invalidated a Tennessee bank tax because it could not be characterized as a nondiscriminatory franchise tax within the parameters of the predecessor to Section 3124(a), Title 31, U.S. Code. The court held that the tax discriminated in favor of obligations issued by Tennessee and its political subdivisions, and against federal obligations, by including in the tax base income from federal obligations, while excluding income from otherwise comparable state and local obligations. In so holding, the court noted that "[a] state tax that imposes a greater burden on holders of federal property than on holders of similar state property impermissibly discriminates against federal obligations." *Id.* at 397.

We find the decision of *Memphis Bank* to be distinguishable from the present case. Initially, we note that the Ohio franchise tax *does not* exclude state and local obligations. These assets are included in the tax base, along with the federal obligations. This alone, however, does not control, our determination of the issue. The court in *Memphis Bank* spoke in terms of "similar state property," or "otherwise comparable" state and local obligations. Therefore, we must also decide whether the assets excluded by the Ohio franchise tax are "otherwise comparable" to the included federal obligations.

For the reasons which follow, we conclude that the excluded assets cannot be said to be otherwise comparable or similar to the federal obligations. Under R.C. 5733.05(A)(5), exclusion of investments depends on the taxpayer's ownership of the companies invested in: eighty-percent ownership of public utilities and insurance companies, and twenty-five-percent ownership of financial institutions. Indeed, the percentage of ownership required to exclude these investments suggests that the taxpayer controls the company in which it has invested. Therefore, the exclusion is based on control and not merely income yield.

In contrast, the obligations that appellants claim are exempt include treasury notes, as well as FNMA and GNMA instruments (which are not obligations of the United States, *Rockford Life Ins. Co.* v. *Illinois Dept. of Revenue* [1987], 482 U.S. 182; *Farmers & Traders State Bank* v. *Johnson* [1984], 121 Ill. App. 3d 43, 458 N.E. 2d 1365) and various other government instruments that do not reflect ownership of, or controlling interest in, any government enterprise. The federal obligations reflect that the federal government has borrowed money and has agreed to repay it with interest. In these situations, appellants sought merely to earn a guaranteed income from these investments.

Furthermore, the remaining as-

sets, such as agricultural land, pollution control facilities, energy conversion facilities, and enterprise zone property, are tangible assets that provide no income. The state evidently excludes these assets to encourage development of agriculture and enterprise zones and to reward a corporation for improving the environment. Thus, these assets are not similar or comparable to the federal obligations. Consequently, their exclusion from the franchise tax does not discriminate, under *Memphis Bank,* against the federal obligations. In this respect, the tax is a nondiscriminatory franchise tax under Section 3124(a), Title 31, U.S. Code.

## II

The final issue for our determination is whether the franchise tax violates the Equal Protection Clauses of the Ohio and United States Constitutions. We begin our analysis with the deference traditionally accorded tax legislation and recognized by the Supreme Court:

"* * * The applicable principles have been often stated and are entirely familiar. The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. * * *

"But there is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' *Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415; *Louisville Gas & Electric Co.* v. *Coleman,* 277 U.S. 32, 37; *Air-Way Electric Appliance Corp.* v. *Day,* 266 U.S. 71, 85; *Schlesinger* v. *Wisconsin,* 270 U.S. 230, 240; *Ohio Oil Co.* v. *Conway,* 281 U.S. 146, 160. 'If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' *Brown-Forman Co.* v. *Kentucky,* 217 U.S. 563, 573. * * *" *Allied Stores of Ohio, Inc.* v. *Bowers* (1959), 358 U.S. 522, 526-528.

Moreover, according to 1 Rotunda, Nowak & Young, Treatise on Constitutional Law, Substance and Procedure (1986) 801, Section 13.7:

"* * * If a tax classification does not employ a suspect classification or burden a fundamental right, the classification will be upheld so long as it has a rational relationship to a legitimate governmental interest. This rational basis standard involves a high degree of judicial deference to legislative bodies. * * *"

We are cognizant that "* * * the challenger to the validity of the statute

must negate every conceivable basis which might support it." *Lyons* v. *Limbach* (1988), 40 Ohio St. 3d 92, 94, 532 N.E. 2d 106, 109. (Citing *Madden* v. *Kentucky* [1940], 309 U.S. 83, 88; *Lehnhausen* v. *Lake Shore Auto Parts Co.* [1973], 410 U.S. 356, 364.)

Similarly, legislative enactments are afforded "a very strong presumption in favor of constitutionality." *State, ex rel. Swetland,* v. *Kinney* (1982), 69 Ohio St. 2d 567, 574, 23 O.O. 3d 479, 484, 433 N.E. 2d 217, 222.

The instant tax does not distinguish between two classes of business dealings or assets; it distinguishes between two classes of taxpayers.[6]

"The States, of course, have broad powers to impose and collect taxes. A State may divide different kinds of property into classes and assign to each class a different tax burden so long as those divisions and burdens are reasonable. *Allied Stores, supra,* at 526-527 ('The State may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products'). It might, for example, decide to tax property held by corporations, including petitioners, at a different rate than property held by individuals. See *Lehnhausen* v. *Lake Shore Auto Parts Co.,* 410 U.S. 356 (1973) (Illinois *ad valorem* tax on personalty of corporations.) In each case, '[i]f the selection or classification is neither capricious nor arbitrary, and rests upon some by 'significant differences between the two classes.' " *Id.* at ____, 103 L.Ed. 2d at 905, 109 S. Ct. at 1508.

We note that both *Phillips* and *Davis* were decided upon the intergovernmental tax immunity doctrine. According to *Phillips,* the offending discrimination must be that the state treats its lessees (or, by extension, holders of its obligations) better than it treats the federal government's. In this case, the state includes both its obligations and federal obligations in appellants' net worth, and the state taxes both at the same rate. The state thus treats its obligations the same as it treats the federal government's. No disparity exists. Charging a lower rate to all other corporations, moreover, does not discriminate against federal obligations under the intergovernmental tax immunity doctrine. As in the case of financial institutions, the state taxes federal obligations held by any other corporation the same as the state taxes its own obligations held by that same corporation. Therefore, the instant tax does not discriminate between two classes of business dealings, the fault in *Phillips*; it discriminates between two classes of taxpayers. Consequently, appellants must succeed, if at all, under the Equal Protection Clause and its rational relationship standard.

---

[6] Appellants assert equal protection violations, but cite to cases decided under the Supremacy Clause of the United States Constitution. Specifically, appellants argue that "when the validity of a classification for equal protection purposes involves another provision of the Constitution, something more than a rational basis is required in order to sustain the classification." The "other provision" of the Constitution, appellants contend, is the Supremacy Clause. To support this argument, appellants direct our attention to *Phillips Chemical Co.* v. *Dumas Independent School District* (1960), 361 U.S. 376, and *Davis* v. *Michigan Dept. of Treasury* (1989), 489 U.S. ____, 103 L. Ed. 2d 891, 109 S. Ct. 1500.

In *Phillips,* the court stated that "[t]he imposition of a heavier tax burden on lessees of federal property than is imposed on lessees of other exempt public property must be justified by significant differences between the two classes." *Id.* at 383.

Reviewing this precedent, the court, in *Davis* v. *Michigan Dept. of Treasury, supra,* stated that the standard of review was not satisfied by merely rational reasons for the discrimination. "Instead, the relevant inquiry is whether the inconsistent tax treatment is directly related to and justified

reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' *Brown-Forman Co.* v. *Kentucky,* 217 U.S. 563, 573 (1910). * * *'' *Allegheny Pittsburgh Coal Co.* v. *Cty. Comm. of Webster Cty.* (1989), 488 U.S. ___, ___, 102 L. Ed. 2d 688, 697, 109 S. Ct. 633, 638.

In the present case, we find that appellants have not met their burden of establishing that the statute has no rational basis. Moreover, appellants have not presented any evidence to support their assertions that the franchise tax impermissibly discriminates against financial institutions, and thus violates the Equal Protection Clause. Rather, appellee submits that financial institutions have historically been treated differently from other corporations. As outlined in two studies admitted into evidence, the financial institution (banking) industry is unique, and it is entirely rational for the General Assembly to conclude that tax parity could not be achieved by taxing financial institutions the same as other industries. For example, financial institutions hold little tangible personal property, but hold much intangible property in deposits and federal obligations. This feature suggests a rational relationship between the tax structure and a valid governmental interest. The state has a valid interest in each corporation paying taxes in exchange for the benefits conferred by the state, including financial institutions. As the commissioner argues, the difference in tax rates allows the state to tax a financial institution on a par with other industries, a rational relationship with a valid governmental interest exists, and no equal protection violation has occurred.

In conclusion, we hold that the Ohio corporation franchise tax is a nondiscriminatory franchise tax under Section 3124(a), Title 31, U.S. Code.

Furthermore, we hold that it is a true excise tax on a financial institution's privilege to operate under its franchise in Ohio, and the tax does not discriminate against federal obligations and in favor of otherwise comparable obligations. The tax does not violate the Supremacy Clause because it treats federal obligations the same as state obligations within the same classes of taxpayers. Nor does it violate the Equal Protection Clause because a rational relationship exists between the franchise tax levied on financial institutions and that levied on other corporations.

Accordingly, the decision of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS and HARSHA, JJ., concur.

HOLMES and WRIGHT, JJ., dissent.

WILLIAM H. HARSHA, J., of the Fourth Appellate District, sitting for H. BROWN, J.

WRIGHT, J., dissenting. I must respectfully dissent from the majority's holding that the tax imposed by R.C. Chapter 5733 is a nondiscriminatory corporate franchise tax as applied to financial institutions. Section 3124(a), Title 31, U.S. Code protects the borrowing power of the United States by prohibiting the consideration of federal obligations, or the interest from such obligations, in the imposition or computation of a tax by the states. The section makes an exception for non-discriminatory franchise taxes. Because the tax imposed by R.C. Chapter 5733 is not a franchise tax but rather is unquestionably nothing more than a poorly disguised property tax, I

cannot join in the majority's judgment here.

As early as 1829, the United States Supreme Court held that obligations of the United States government were immune from state taxation. *Weston* v. *City Council of Charleston* (1829), 27 U.S. (2 Pet.) 449. The court premised this holding upon the Borrowing and Supremacy Clauses of the United States Constitution, Clause 2, Section 8, Article I, and Clause 2, Article VI, respectively, and stated that such immunity was necessary for the United States government to be able to borrow efficaciously. *Id.* The Borrowing Clause expressly authorizes Congress to borrow money on the credit of the United States. Clause 2, Section 8, Article I.

To ensure that investors would continue to consider these federal obligations as viable and appealing investments, Congress enacted Section 742, Title 31, U.S. Code, which provided that "all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority." The United States Supreme Court found that the statute's purpose was to proscribe taxes that "* * * diminish in the *slightest degree* the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit." (Emphasis added.) *New Jersey Realty Title Ins. Co.* v. *Div. of Tax Appeals* (1950), 338 U.S. 665, 675.

In 1959, Congress amended Section 742, Title 31, U.S. Code by adding a second sentence, and, as since amended, the section currently reads:

"Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except —

"(1) a nondiscriminatory *franchise tax or another nonproperty tax* instead of a franchise tax, imposed on a corporation; and

"(2) an estate or inheritance tax." (Emphasis added.) Section 3124(a), Title 31, U.S. Code.

This amendment removed, for state and local tax purposes, the distinction between indirect taxes and direct taxes on federal obligations held by corporations. See *American Bank & Trust Co.* v. *Dallas Cty.* (1983), 463 U.S. 855, 862; *Montana Bankers Assn.* v. *Montana Dept. of Revenue* (1978), 177 Mont. 112, 580 P. 2d 909. Thus, a state or its political subdivision is flatly prohibited from taxing federal obligations outside the narrow ambit of Sections 3124(a)(1) and (2), Title 31, U.S. Code.

From 1932 until 1981, Ohio taxed financial institutions based upon the value of the shares of stock of the institution (the "shares" tax) and its deposits (the "deposits" tax). G.C. 5638 (Am. S.B. No. 323, 114 Ohio Laws 714, 722). Both of these taxes clearly were imposed upon the property of the institution, with the shares tax borne directly by the institution and the deposits tax generally borne by the depositors. Because of persistent doubts about the constitutionality of the shares and deposits taxes, the General Assembly phased out the deposits tax in 1982 and 1983, R.C. 5707.03(C), and repealed the deposits tax, effective in 1981. Am. Sub. H.B. No. 694 (139 Ohio Laws, Part II, 3460, 3992, 3994); Am. Sub. H.B. No. 552 (139 Ohio Laws, Part II, 3163, 3199). The loss of revenue from these taxes combined with the unique asset and capitalization structure of financial in-

stitutions[7] presented the General Assembly with a novel problem. The legislature responded by imposing the franchise tax on financial institutions, R.C. 5725.26, Am. Sub. H.B. No. 694 (139 Ohio Laws, Part II, 3460, 3999) and adding a net worth tax rate applicable *only* to financial institutions, R.C. 5733.06(D), Am. Sub. H.B. No. 291 (140 Ohio Laws, Part II, 2872, 3211).

It is with this new net worth tax rate that the problem lies. In reality, R.C. 5733.06(D), stripped of its trappings, is nothing more or less than a disguised property tax posing as a franchise tax, since the tax bases for the old and the new taxes are the same.[8] Both tax the property of financial institutions. I feel strongly that R.C. Chapter 5733.06(D) must yield to the federal prohibition against a state or its subdivision imposing such a property tax on holders of federal obligations.

We have only to look to our sister state of Pennsylvania for support of this position. The facts of *Dale Natl. Bank* v. *Commonwealth of Pennsylvania* (1983), 502 Pa. 170, 465 A. 2d 965, are quite similar to the facts of this case. In *Dale,* the Pennsylvania Supreme Court analyzed Pennsylvania's attempt to bring a bank shares tax within the exception for nondiscriminatory franchise taxes found in Section 3124(a), Title 31, U.S. Code.

The Pennsylvania statute taxed the actual value of a bank's capital stock, paid-in surplus, and undivided profits "for the privilege of doing business in this Commonwealth." *Id.* at 176, 465 A. 2d at 968. This tax base is essentially the same as that upon which Ohio's share tax was levied. Rejecting the Pennsylvania Legislature's characterization of the tax as a franchise tax, the Pennsylvania Supreme Court declared:

"* * * [I]t is clear that the tax imposed by section 701 was and continues to be a property tax identical in operation and effect to the tax invalidated in *American Bank* [(1983), 463 U.S. 855] * * * which, contrary to the intent of Congress, 'unduly burden[s] federal obligations.' " *Id.* at 176, 465 A. 2d at 968.

Indeed, the Ohio Department of Taxation itself recognized that the new tax was old wine in a new bottle when its report stated:

"* * * The base of the net worth franchise tax would be virtually identical to the [then] present share tax[.] * * * [I]n reality it would be more of a change in the name of the tax than [in] the form * * *." Ohio Dept. of Taxation, The Taxation of Financial Institutions in Ohio (Jan. 1981) 19.

It is, therefore, clear to me that the R.C. Chapter 5733 franchise tax as applied to financial institutions is a property tax which Ohio is prohibited from

---

[7] Financial institutions, unlike most other corporations, have an asset and capitalization structure typified by a small investment in tangible personal property and a large investment in federal obligations and other intangibles.

[8] The taxable shares of financial institutions were assessed on "the aggregate amount of the capital, the surplus or reserve fund, and the undivided profits

* * *" of the financial institution as shown on the annual return. Former R.C. 5725.07. Am. H.B. No. 944 (126 Ohio Laws, Part II, 12, 16).

The net worth base for franchise tax purposes is, with stated exclusions, the book value of the corporation's "capital, surplus, whether earned or unearned, undivided profits, and reserves * * *." R.C. 5733.05(A).

levying on holders of federal obligations. In accordance with the mandates of Section 3124(a), Title 31, U.S. Code, I would reverse the decision of the Board of Tax Appeals and remand for a redetermination of the appellants' tax liability.

HOLMES, J., concurs in the foregoing dissenting opinion.