OPINIONS OF THE SUPREME COURT OF OHIO
The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Justine Michael, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Buckeye International, Inc., Appellant, v. Limbach, Tax
Commr. of Ohio, Appellee.

Taxation -- Valuation of taxable property -- APB 16 valuations
are probative and competent evidence -- Taxpayer may
challenge APB 16 valuations -- Notice of appeal to Board
of Tax Appeals -- In resolving questions regarding
effectiveness of a notice of appeal, Supreme Court not
disposed to deny review by a hypertechnical reading of the
notice.

[Cite as Buckeye Internatl., Inc. v. Limbach (1992),
Ohio St.3d     .]

(No. 91-1541 -- Submitted May 5, 1992 -- Decided August 5,
1992.)

Appeal from the Board of Tax Appeals, No. 87-D-970.

In December 1979, Worthington Industries, Inc. set in
motion the purchase of Buckeye International, Inc. ("Old
Buckeye"), a manufacturer of steel castings for the railroad
industry and injection-molded plastics for the automotive
industry.  Worthington Industries established a wholly owned
subsidiary, Worthington International, Inc. ("International"),
appellant, to purchase Old Buckeye's stock.  733,128 shares
were purchased at $25 per share, giving International a
forty-four percent interest in Old Buckeye.  On April 15, 1980,
the boards of directors of International and Old Buckeye agreed
to merge Old Buckeye into International by exchanging 1.5
shares of Worthington Industries common stock for each share of
Old Buckeye.  In May 1980, Old Buckeye's shareholders approved
the merger.  It became effective, retroactively, on April 20,
1980.  Old Buckeye ceased to exist, and International changed
its name to Buckeye International, Inc. ("Buckeye").

In reporting the economic substance of this purchase to
its shareholders, Worthington Industries allocated the purchase
price according to (1970) Accounting Principles Board Opinion
16, in 1 Financial Accounting Standards Board, Accounting
Standards, Original Pronouncements (1982) 242-265 ("APB 16").
Worthington Industries added the cash initially paid for the
shares of stock and the over-the-counter market price of the
shares it issued for Old Buckeye stock to determine the price
it paid for Old Buckeye.  Worthington Industries then

determined and added the value of the current and long-term liabilities that it assumed and allocated this total under APB 16 categories of fixed assets. The fixed assets include real estate and personal property. Worthington Industries derived the ratios used to make the allocation from appraisals of Old Buckeye's property. Old Buckeye had obtained the appraisals in 1979 for financing reasons.

According to Buckeye's outside accountant, who authorized the signing of the auditor's opinion in Worthington Industries' 1980 annual report, APB 16 merely allocates the purchase price; it is not designed to determine the fair value of assets. However, according to this witness, APB 16 normally applies only to arm's-length transactions between a willing buyer and a willing seller. Further, this witness believed that Worthington Industries correctly applied APB 16.

Worthington Industries, in reporting its assets in accord with APB 16, allocated to its personal property a portion of the purchase price. Thus, the amount reported for its personal property was in excess of the historic book value of that property. Notwithstanding this allocation, Buckeye, the subsidiary, valued its personal property for the tax years 1982, 1983 and 1984 on the basis of the book values that Old Buckeye had recorded. The subsidiary failed to account for the allocated excess. Nor did the subsidiary produce any evidence of value other than the book values.

On audit, the Tax Commissioner, appellee, added the allocated excess amount to the book costs. In determining value, she added (1) the $27,205,229 which represented historical book cost as listed by Buckeye on its 1982 tax return and reported on the May 31, 1981 balance sheet attached to the return, (2) the surplus from the sale and assigned by Buckeye to personal property on its 1982 return ($9,819,000), and (3) equipment additions since May 31, 1980 ($8,104,833). She determined that the total true value for all personal property was $45,129,062. Next, she calculated ratios, based on the previously returned, book-cost values, to allocate this amount to the various categories of equipment and to the taxing districts containing the property. She also performed these calculations for the 1983 and 1984 returns.

On appeal, the Board of Tax Appeals ("BTA") found that the purchase was at arm's length and that Worthington Industries had properly allocated the purchase price. Accordingly, the BTA affirmed the commissioner's order.

In affirming, the BTA ignored a double-counting question posed by Buckeye and declined to rule on several constitutional questions raised by Buckeye. Further, the BTA did not rule on Buckeye's claim that the commissioner included exempt property in making the valuations.

Buckeye's claim of double counting relies upon the following evidence. In Exhibit 10, it displayed net equipment additions for 1980 and 1981. It had included this equipment in its 1982 personal property tax return. These additions are included in the $37,024,229 reported on its May 31, 1981 balance sheet, which was the starting point for the commissioner's calculations. Buckeye says that the commissioner added these same additions to that starting point. Thus, Buckeye claims that these additions were counted

twice.  Furthermore, the agent testified that these additions were counted for all three years of the audit.

This cause is before this court upon an appeal as of right.

Vorys, Sater, Seymour & Pease, Raymond D. Anderson, Anker M. Bell and Eric A. Pierce, for appellant.

Lee I. Fisher, Attorney General, and James C. Sauer, for appellee.

Per Curiam.  Two issues are presented for review.  We address them separately.

I

The Allocation Issue

Buckeye argues that APB 16 does not fairly value its property and that the property should be valued based on its depreciated book value.  The commissioner responds that her valuation comports with case law.

According to Tele-Media Co. of Addil v. Lindley (1982), 70 Ohio St.2d 284, 24 O.O.3d 367, 436 N.E.2d 1362, syllabus:

"The best evidence of the 'true value in money' of tangible personal property is the proper allocation of the purchase price of an actual, recent sale of the property in an arm's-length transaction.  (Conalco, Inc. v. Monroe Cty. Bd. of Revision [1977], 50 Ohio St.2d 129 [4 O.O.3d 309, 363 N.E.2d 722], approved and followed.)"

Thus, if the sale is arm's-length, actual and recent, and the purchase price is properly allocated, the BTA may adopt the allocation as the true value.

Buckeye's witnesses admitted that the transaction was arm's length.  The arm's length nature of the sale was a precondition for Worthington Industries' application of APB 16.  The sale was actual and recent since it occurred one year prior to the valuation date.  Finally, Buckeye admitted that the allocation was proper since it reported the sale on this basis to its shareholders in its annual report.  Thus, the BTA reasonably and lawfully valued the property.

However, Buckeye contends that neither we nor the BTA has approved the application of APB 16 in prior cases.  Indeed, the BTA rejected, until this case, all previous applications of APB 16.  However, the BTA did find a proper allocation in this case, and it has wide latitude to so find in valuation matters.  Snider v. Limbach (1989), 44 Ohio St.3d 200, 202, 542 N.E.2d 647, 649.

It is significant that Buckeye presented no evidence (other than historic book values) of value to contradict the allocation it made under APB 16 and which it publicly represented to its shareholders.  This failure is significant when we consider whether the BTA's decision is supported by the evidence.  Book values may have little relation to current values.  Apparently, Old Buckeye did have appraisals made shortly before the purchase.  Thus, Buckeye presumably could have produced evidence of the value of the personal property in question had it chosen to do so.

Buckeye also contends that requiring it, a publicly traded company, to value its property under APB 16, while privately held companies may ignore APB 16 and value their property based on depreciated book value, denies Buckeye of equal protection.

Under Allegheny Pittsburgh Coal Co. v. Cty. Comm. of Webster Cty. (1989), 488 U.S. 336, 343, 102 L.Ed.2d 688, 697, 109 S.Ct. 633, 637, "[t]he Equal Protection Clause 'applies only to taxation which in fact bears unequally on persons or property of the same class,'" quoting Charleston Fed. S. & L. Assn. v. Alderson (1945), 324 U.S. 182, 190, 89 L.Ed. 857, 863, 65 S.Ct. 624, 629.  However, Buckeye presented no evidence to "in fact" prove this treatment.  Thus, Buckeye has not met its evidentiary burden.  Bank One Dayton, N.A. v. Limbach (1990), 50 Ohio St.3d 163, 172, 553 N.E.2d 624, 632.  Moreover, we have not held that Buckeye, or any other taxpayer, is bound by APB 16 valuations.  Our holding is simply that the APB 16 valuations are probative and competent evidence.  A taxpayer may challenge such valuations.  Snider v. Limbach, supra, at 201-202, 542 N.E.2d at 649.  The decision of the BTA would then be reviewed to determine whether it was reasonable and lawful.

II

The Double-Counting Issue

Buckeye claims that the auditor double counted personal property additions and included exempt property as a part of the excess amount allocated to personal property.  The commissioner maintains that Buckeye did not raise this error in its notice of appeal to the BTA.  The commissioner also argues that Buckeye failed to establish the extent of that double counting.

Failure to include errors in the notice of appeal to the BTA results in the BTA's lack of jurisdiction over the errors and the court's inability to review such errors.  Osborne Brothers Welding Supply, Inc. v. Limbach (1988), 40 Ohio St.3d 175, 178, 532 N.E.2d 739, 742.  In response, Buckeye contends that paragraphs one, six, and seven of its notice of appeal did notify the BTA of these errors.  Paragraph one states:

"(1) The commissioner erred in failing to follow the general requirement of R.C. 5711.18 that in valuing 'personal property used in business, the book value thereof less book depreciation at such time shall be listed, and such depreciated book value shall be taken as the true value of such property.'"

In Manfredi Motor Transit Co. v. Limbach (1988), 35 Ohio St.3d 73, 77, 518 N.E.2d 936, 940-941, we concluded that the theory stated in the notice of appeal was so distinct from the theory argued in the taxpayer's brief that the taxpayer should have specifically stated the latter theory in the notice of appeal.  However, in Goodyear Tire & Rubber Co. v. Limbach (1991), 61 Ohio St.3d 381, 383, 575 N.E.2d 146, 147, we concluded that the taxpayer could assert an alternative argument since it specified the commissioner's action that it questioned, cited the statute under which it objected, and asserted the treatment it believed the commissioner should have applied to the income.

In this case, the claim of double counting relates to the value of the property mentioned in paragraph one of the notice.  The commissioner's auditor admitted that double counting property would be contrary to statute.  We conclude that Buckeye has raised an alternative argument similar to Goodyear, rather than a distinct, separate objection as in Manfredi.  In resolving questions regarding the effectiveness of a notice of appeal, we are not disposed to deny review by a

hypertechnical reading of the notice.  Abex Corp. v. Kosydar (1973), 35 Ohio St.2d 13, 17, 64 O.O.2d 8, 10, 298 N.E.2d 584, 587.  Accordingly, we find that Buckeye has raised the issue of double counting.  Furthermore, Buckeye has presented evidence indicating that the commissioner did double count property additions.  The BTA should not have ignored it.  We direct the BTA to analyze the evidence and decide whether Buckeye has established a double counting of property and the amount attributable thereto.

Finally, Buckeye argues that the commissioner included exempt property in the value.1  Buckeye failed to quantify the amounts of exempt property allegedly included in the excess purchase price attributable to its property, and we allow that portion of the BTA decision to stand.

Accordingly, we affirm the portion of the BTA's decision that finds the allocated purchase price to be the value of the personal property and remand this matter to the BTA for it to determine whether the commissioner double counted personal property and the consequence thereof.

> Decision affirmed in part,
> reversed in part
> and cause remanded.

Moyer, C.J., Sweeney, Holmes, Douglas, H. Brown and Resnick, JJ., concur.

Wright, J., concurs in judgment only.

FOOTNOTES

1  Buckeye also asserted a due process violation but did not brief that argument.