BELGRADE GARDENS, INC., APPELLEE, *v.* KOSYDAR,
TAX COMMR., APPELLANT.

(No. 73-816—Decided May 8, 1974.)

*Mr. George T. Manos,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. John C. Duffy, Jr.,* for appellant.

WILLIAM B. BROWN, J. The question presented is whether a taxpayer may receive a refund for an erroneous overpayment of sales taxes where the taxpayer has not retained primary records of taxable sales transactions, but the Tax Commissioner has ascertained the amount of overpayment by way of a test check conducted in an audit for a representative period.

The Tax Commissioner's argument may be summarized as follows: The taxpayer had the burden of proving

the amount of refund; failure to maintain primary records required by R. C. 5739.11 and Rule TX-11-02 precluded the taxpayer from meeting his burden of proof; and a test check conducted by the Tax Commissioner cannot be used to the advantage of the taxpayer.

It is clear that the taxpayer failed to maintain the records required to be kept pursuant to R. C. 5739.11 and Rule TX-11-02, and that an overpayment of sales taxes was made. Had the taxpayer in this case maintained guest checks and cash register tapes the amount of overpayment would have been subject to precise calculation, and no controversy would have arisen.

However, the absence of records does not, per se, preclude a refund to a taxpayer who has erroneously overpaid sales taxes.

R. C. 5703.05, in pertinent part, provides that the Tax Commissioner shall have the power, duty and function of:

"(B) Exercising the authority provided by law relative to * * * refunding taxes * * * erroneously * * * collected, or for any other reason overpaid * * * and in addition, *the commissioner may* on written application of any person, firm or corporation claiming to have overpaid * * * any tax * * * or on his own motion, investigate the facts and make * * * a written statement of his findings, and, if he finds that there has been an overpayment, issue * * * a certificate of abatement payable to the taxpayer * * * which shows the amount of the overpayment and the kind of tax overpaid. * * *" (Emphasis ours.)

R. C. 5703.05 superseded G. C. 1464-3, which provided that "the Tax Commissioner shall have authority," instead of "the commissioner may," emphasized above in R. C. 5703.05(B). It is our opinion that the difference in phraseology is insubstantial.

In construing G. C. 1464-3, this court held, in paragraph two of the syllabus in *Niles Bank Co.* v. *Evatt* (1945), 145 Ohio St. 179:

"On written application of any taxpayer claiming to have overpaid to the Treasurer of State at any time within five years prior to the making of such application, a tax

payable under a law which the Department of Taxation is required to administer, *it becomes the mandatory duty of the Tax Commissioner* to investigate the facts in connection with such claim and, if he shall find that there has been an overpayment, to issue to the taxpayer a certificate of abatement." (Emphasis ours.)

In this case, the Tax Commissioner exercised his mandatory duty by investigating the facts in connection with the taxpayer's claim, and *found* that an overpayment had occurred. However, the Tax Commissioner refused to issue a certificate of abatement because, in his opinion, it was "impossible" to determine the *amount* of the overpayment.

We fail to perceive the reasonableness of the Tax Commissioner's position. His examiner conducted a test check and audit of taxpayer's place of business and determined that taxable beverage sales had been twice-reported on register A, resulting in an overpayment of taxes which did not exceed $4,643.95.

The audit period herein exceeded three years. There is no question that a test check conducted to determine the appropriate tax liability for that period could provide an accurate figure for the amount of overpayment. An audit of guest checks and cash register tapes maintained by the taxpayer for the period would provide a more accurate figure than the calculated approximation provided by a test check. However, adequate records were not available in this case, and the Tax Commissioner conducted a test check to fulfill his mandatory duty to investigate the facts in connection with the taxpayer's claim.

Neither party has contested the accuracy of the test check. Although the taxpayer's original claim was for $7,979.11, it argues that the test check determination of $4,643.95 should stand.

In *Cherry Street Corp.* v. *Porterfield* (1971), 27 Ohio St. 2d 260, this court addressed the issue of validity of test checks conducted by the Tax Commissioner, and held that:

"In order for a test check conducted pursuant to R.

C. 5739.10 to be valid, it must be conducted under conditions which approximate, as nearly as possible, the conditions under which the business being checked was operated during the audit period.''

Thus, we hold that a valid test check conducted by the Tax Commissioner in fulfilling his mandatory duty to investigate a claim of erroneous overpayment of sales taxes is substantive evidence of the amount of overpayment.

However, the Tax Commissioner proposes that a valid test check conducted by him cannot be used to the advantage of the taxpayer. The Tax Commissioner's argument in support of this proposition is twofold:

First, he argues that his *acceptance* of the taxpayer's return rendered R. C. 5739.10 inapplicable under the provision that: ''* * * where a vendor does not have adequate records * * * the Tax Commissioner may refuse to accept the vendor's return and, upon the basis of test checks * * *'' determine the proper tax assessment. Thus, as the argument goes, if the return has not been refused, any subsequent test check should not have been made and is therefore inoperative.

That argument is an attempt to stretch the scope of R. C. 5739.10 to include the claim for refund situation. It is difficult to imagine any claim for refund case where the taxpayer's return has not been previously accepted by the Tax Commissioner.

The test check conducted herein by the Tax Commissioner was made pursuant to his duty to investigate the claim of erroneous overpayment of taxes, and not pursuant to any statutory grant of authority contained in R. C. 5739.10.

Second, the Tax Commissioner contends that the taxpayer must prove the amount of overpayment without taking into account the existence of a valid test check conducted by the Tax Commissioner.

That contention is without merit. This court has never held that any specific burden of proof attaches to a taxpayer who claims to have made an erroneous overpay-

ment of sales tax. Indeed, R. C. 5703.05 places the duty of ascertaining the amount of overpayment upon the Tax Commissioner.

Of course, if the taxpayer chooses to contest the Tax Commissioner's determination of the amount of overpayment, it is then incumbent upon the taxpayer, as it is in assessment cases, to show in what manner and to what extent the Tax Commissioner was wrong. Cf. *Ohio Fast Freight* v. *Porterfield* (1972), 29 Ohio St. 2d 69, 71.

However, in this case the taxpayer has acquiesced in the Tax Commissioner's audit which disclosed an overpayment of $4,643.95.

Accordingly, we hold that, in the absence of other evidence, a valid test check conducted by the Tax Commissioner determines the amount of refund due a taxpayer who has made an erroneous overpayment of sales taxes.

The decision of the Board of Tax Appeals is, therefore, affirmed.

*Decision affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and P. BROWN, JJ., concur.