CHICAGO FREIGHT CAR LEASING COMPANY, APPELLEE AND CROSS-APPELLANT,
*v.* LIMBACH, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as *Chicago Freight Car Leasing Co.
v. Limbach* (1992), 62 Ohio St.3d 489.]

(No. 91-2—Submitted November 5, 1991—Decided February 12, 1992.)

*Vorys, Sater, Seymour & Pease, Raymond D. Anderson, Anthony L. Ehler, Tony C. Merry* and *Eric A. Pierce,* for appellee and cross-appellant.

*Lee I. Fisher,* Attorney General, and *James C. Sauer,* for appellant and cross-appellee.

---

*Per Curiam.*  The purpose of the 4–R Act is " ' * * * to provide the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States.' * * * " *Burlington Northern RR. Co. v. Oklahoma Tax Comm.* (1987), 481 U.S. 454, 457, 107 S.Ct. 1855, 1857, 95 L.Ed.2d 404, 409, quoting Section 101(a) of the Act.  Section 306 of the Act " * * * * prohibits states from imposing taxes which result in discriminatory treatment of railroads." *General American, supra,* at 3.  In *General American,* the district court found that Ohio's carline tax, if assumed to be a property tax, violated Section 306(1)(c) of the 4–R Act because freight cars were the only commercial and industrial property on which the state, rather than the counties, assessed a property tax.  Furthermore, the court found that the tax, if assumed to be an excise tax, violated Section 306(1)(d) of the 4–R Act because it singled out carline companies for a tax which was not imposed on other taxpayers.  Consequently, the court invalidated the tax.  However, the court declined to grant refunds for amounts paid by GATC before it filed its complaint, concluding that the 4–R Act limited its authority to prescribing a prospective remedy.  Furthermore, the court decided that the "equitable restraint doctrine" required it to exercise extraordinary care before interfering in state tax matters.

In this case, the commissioner argues that she has discretion in issuing a certificate of abatement because R.C. 5703.05(B) uses "may" in authorizing this relief, she acted reasonably in denying the abatement, and the 4–R Act provides for only prospective relief.  Chicago Freight, conversely, responds that R.C. 5703.05(B) requires the commissioner to abate these taxes and argues, in its cross-appeal, that due process and equal protection require that it receive interest on the amounts abated.

Section 306(2) of the 4–R Act, now codified at Section 11503(c), Title 49, U.S.Code, empowers a federal district court, " * * * concurrent with other jurisdiction of courts of the United States and the states, to prevent a violation of subsection (b) of this section [prohibiting discriminatory taxation] * * *." Nevertheless, Chicago Freight applies for abatement under R.C. 5703.05(B), which states:

"All powers, duties, and functions of the department of taxation are vested in and shall be performed by the tax commissioner, which powers, duties, and functions shall include, but shall not be limited to the following:

" * * *

"(B) Exercising the authority provided by law relative to remitting or refunding taxes or assessments, including penalties and interest thereon, illegally or erroneously assessed or collected, or for any other reason overpaid, and in addition, *the commissioner may on written application of any person, firm, or corporation claiming to have overpaid to the treasurer of state at any time within five years prior to the making of such application any tax payable under any law which the department of taxation is required to administer which does not contain any provision for refund,* or on his own motion investigate the facts and make in triplicate a written statement of his findings, *and, if he finds that there has been an overpayment, issue in triplicate a certificate of abatement payable to the taxpayer,* his assigns, or legal representative which shows the amount of the overpayment and the kind of tax overpaid. * * * " (Emphasis added.)

In *Ohio Utilities Co. v. Collins* (1976), 48 Ohio St.2d 169, 171, 2 O.O.3d 370, 371, 357 N.E.2d 1077, 1078, the court set forth the criteria for an applicant to obtain an abatement of overpaid taxes. The applicant must: (1) overpay the tax under a statute not providing for a refund, (2) overpay under a law administered by the Department of Taxation, (3) overpay to the state treasurer, and (4) file an application within five years of the alleged overpayment.

As to the commissioner's assertion that she has discretion over issuing abatements, in *Niles Bank Co. v. Evatt* (1945), 145 Ohio St. 179, 30 O.O. 375, 60 N.E.2d 789, paragraph two of the syllabus, we stated:

"On written application of any taxpayer claiming to have overpaid to the Treasurer of State at any time within five years prior to the making of such application, a tax payable under a law which the Department of Taxation is required to administer, it becomes the mandatory duty of the Tax Commissioner to investigate the facts in connection with such claim and, if he shall find that there has been an overpayment, to issue to the taxpayer a certificate of abatement."

In *Belgrade Gardens, Inc. v. Kosydar* (1974), 38 Ohio St.2d 135, 67 O.O.2d 147, 311 N.E.2d 1, paragraph one of the syllabus, we approved and followed the "mandatory duty" language of *Niles Bank.* We regarded the language change from "the Tax Commissioner shall have authority," employed in G.C. 1464–3(2) and analyzed in *Niles Bank,* to "the commissioner may," which now appears in R.C. 5703.05(B), as insubstantial. *Id.* at 140, 67 O.O.2d at 150, 311

N.E.2d at 5. Thus, we read this statute to require the commissioner to abate taxes on finding that an overpayment occurred.

As to the retroactivity of the *General American* decision, Ohio law supports retroactivity. In *Lewis v. Symmes* (1900), 61 Ohio St. 471, 56 N.E. 194, paragraph one of the syllabus, this court stated:

"The rule that retrospective operation should not be given to a change in judicial opinions respecting the constitutional validity of legislative enactments can be invoked only to avoid the impairment of the obligation of contracts which have been entered into pursuant to statutory provisions and in reliance upon former adjudications respecting their validity."

In *Lewis,* property owners were able to enjoin the collection of assessments for a highway improvement authorized by an enactment similar to one later declared unconstitutional. The *Lewis* court considered it significant that the property owners did not actively promote the improvement in any way. The owners were able to block the assessment despite their knowledge of the authorities' intention to make the improvement and the assessment, and despite the presumed constitutionality of the legislation at the time it was enacted. The *Lewis* court declared that the consolidated cases should be " * * * determined by the general rule that unconstitutional enactments are nullities. * * * " *Id.* at 487, 56 N.E. at 196.

In *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E.2d 467, 468, we stated, as a general rule, " * * * that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision. * * * " In *Peerless Elec.,* we upheld the denial of applications requested under a decision that we had subsequently overruled.

However, the commissioner maintains that the taxes she collected from Chicago Freight have already been budgeted and spent. As a consequence, she argues, abatements must be paid from future taxes, affecting future budgets. To this, Chicago Freight responds that the 4–R Act became effective in 1979, and Ohio collected the carline tax until 1987, despite a growing number of decisions in other states invalidating such taxes.

The effect on Ohio's budget does concern us. However, in providing for abatement of overpaid taxes, the General Assembly has answered the commissioner's argument. See, also, *Burlington Northern RR. Co. v. Bd. of Supervisors of Adair Cty.* (Iowa 1988), 418 N.W.2d 72; *Dairyland Power Coop. v. State Bd. of Equalization & Assessment* (1991), 238 Neb. 696, 472 N.W.2d 363.

Moreover, in *James B. Beam Distilling Co. v. Georgia* (1991), 501 U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481, the United States Supreme Court held that a new rule of law invalidating a statute should apply retroactively unless barred by procedural requirements, such as a statute of limitations, or by *res judicata.* Justice Souter, in the lead opinion, stated that " * * * the remedial inquiry is one governed by state law, at least where the case originates in state court. But the antecedent choice-of-law question is a federal one where the rule at issue itself derives from federal law, constitutional or otherwise. * * * " (Citations omitted.) *Id.* at ——, 111 S.Ct. at 2443, 115 L.Ed.2d at 488. Justice Souter wrote that, under the declaratory theory of law, the court does not make law in its decisions; it discovers law and must apply it to all similar litigants. *Id.* at —— – ——, 111 S.Ct. at 2443–2444, 115 L.Ed.2d at 488–489. Under all this authority, therefore, Chicago Freight is entitled to an abatement of the overpaid taxes.

As to the awarding of interest on the abated amounts, Chicago Freight first argues that R.C. 5703.05(B) specifically requires the commissioner to pay interest on the amounts abated. However, the statute grants the commissioner authority to remit or refund taxes illegally or erroneously assessed or collected, "including penalties and interest thereon. * * * " This language requires the commissioner to refund any interest collected from the taxpayer, not to pay interest accrued on amounts abated. Indeed, the separate abatement language orders her to abate only overpayments of taxes; the abatement language does not mention interest. Thus, R.C. 5703.05(B) does not require paying interest on abated amounts.

Chicago Freight also argues that to refuse interest on abatements denies it equal protection since other refund statutes provide for the payment of interest. See R.C. 5733.26(B), 5739.132(B), and 5741.10.

According to *Bank One, Dayton, N.A. v. Limbach* (1990), 50 Ohio St.3d 163, 170, 553 N.E.2d 624, 631, a tax classification, not employing a suspect classification or burdening a fundamental right, survives equal protection scrutiny if it has a rational relationship to a legitimate governmental interest. In this analysis, the courts, to a high degree, defer to the legislature. *Id.* Moreover, " * * * the challenger to the validity of the statute must negate every conceivable basis which might support it. * * * " *Lyons v. Limbach* (1988), 40 Ohio St.3d 92, 94, 532 N.E.2d 106, 109, citing *Madden v. Kentucky* (1940), 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593, and *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351, 358. Finally, the courts employ a very strong presumption in favor of constitutionality. *State, ex rel. Swetland, v. Kinney* (1982), 69 Ohio St.2d 567, 574, 23 O.O.3d 479, 484, 433 N.E.2d 217, 222.

494

Here, Chicago Freight has failed to negate at least one rational basis. The commissioner, under R.C. 5703.05(B), may abate taxes for up to five years after the overpayment while, under the refund-with-interest statutes that Chicago Freight alludes to, she may refund taxes for a shorter time. Thus, abatements can be obtained for longer periods than refunds. Failure to award interest in this case does not deny Chicago Freight equal protection.

Finally, as to due process, we note that, contrary to Chicago Freight's assertion, *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dept. of Business Regulation of Florida* (1990), 495 U.S. ——, 110 S.Ct. 2238, 110 L.Ed.2d 17, did not rule that the state's failure to pay interest on refunds of illegally collected taxes is a denial of due process. Moreover, Chicago Freight has not persuaded us that Ohio's failure here is such a denial.

Accordingly, we affirm the decision of the BTA.

*Decision affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.