## In re Petitions of Norman Williams and Susan Letourneau

## Thor Christensen, et al. v. Michael D. Griffes, Commissioner of Motor Vehicles

[686 A.2d 964]

Nos. 95-293 & 95-294

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 15, 1996

*Norman Williams* of *Gravel and Shea*, Burlington, for Plaintiffs-Appellants.

*Jeffrey L. Amestoy*, Attorney General, *William E. Griffin*, Chief Assistant Attorney General, and *Thomas R. Viall*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Gibson, J.** Taxpayers appeal from a judgment in these consolidated class actions in which the superior court concluded that taxpayers are not entitled to interest on tax refunds paid by the Department of Motor Vehicles. They argue that the Fifth Amendment Just Compensation Clause and the Fourteenth Amendment Due Process Clause require payment of interest on the wrongfully collected taxes. We affirm.

In *Barringer v. Griffes*, 1 F.3d 1331, 1339 (2d Cir. 1993), *cert. denied*, 510 U.S. 1072 (1994), the United States Court of Appeals for the Second Circuit held that Vermont's motor vehicle purchase and use tax, which provided a credit for sales tax paid to Vermont but not for sales tax paid to other states, violated the Commerce Clause of the United States Constitution. In response, the Vermont Legislature passed Act No. 223, which requires the Commissioner of Motor Vehicles to refund any use tax collected after August 31, 1980, where the claimant requests the refund in writing with proof of payment of sales or use tax in another state. The Act specifically states that the tax shall be refunded "without interest." 1993, No. 223 (Adj. Sess.), § 3. Taxpayers received refunds but claim they are also entitled to interest.[*]

The Fifth Amendment Just Compensation Clause provides that "private property [shall not] be taken for public use, without just

---

[*] Earlier history of this case is detailed in *Williams v. State*, 156 Vt. 42, 44-47, 589 A.2d 840, 842-43 (1990).

compensation." U.S. Const. amend. V. Taxpayers rely on *Henderson Bridge Co. v. Henderson City*, 173 U.S. 592, 614-15 (1899), arguing that the United States Supreme Court explicitly recognizes that the Just Compensation Clause applies to taxes illegally collected. In *Henderson*, the Court rejected the defendant's contention that municipal taxation of a bridge that did not receive any benefits from the municipality amounted to a taking of private property without just compensation. The Court noted, however, that "[i]t is conceivable that taxation may be of such a nature and so burdensome as properly to be characterized a taking." *Id.* at 614; see also *Acker v. Commissioner of Internal Revenue*, 258 F.2d 568, 575 (6th Cir. 1958) (income tax rates, although high, have not reached confiscation or "taking in constitutional sense"; taxpayers' concerns must be addressed to Congress, not courts), *aff'd*, 361 U.S. 87 (1959).

Although it is "conceivable" that in extreme cases a tax may rise to the level of a taking, we cannot find the interest at issue here so extreme or burdensome as to bring a taxation claim within the proscription of the Fifth Amendment. See *Pendell v. Department of Revenue*, 847 P.2d 846, 849-50 (Or. 1993) (taxpayers challenge government's power to tax, not power of eminent domain, where they sought interest on income tax refunds). Indeed, taxpayers have cited no case in which a tax, or the interest on a tax, is held to be a taking.

Instead, taxpayers rely on *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980), and *United States v. $277,000 U.S. Currency*, 69 F.3d 1491 (9th Cir. 1995). In *Webb's*, the United States Supreme Court held that the county violated the Fifth Amendment by retaining the interest on an interpleader fund, where the county also retained a clerk's fee for services rendered. 449 U.S. at 164-65. In *$277,000*, the Court of Appeals for the Ninth Circuit held that, where the government has actually or constructively earned interest on cash it seized in a forfeiture action, it must disgorge the interest along with the money it is required to return. 69 F.3d at 1498. Neither case asserts taxpayers' position that failure to pay interest on a tax refund amounts to a taking. Indeed, the holding in *$277,000* is based on a previous order of the trial court, not the Just Compensation Clause. See *id.* at 1496.

Taxpayers also argue that the Commissioner is obligated to pay interest on the tax refunds under the Due Process Clause of the Fourteenth Amendment. They rely on *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990), which held that "the Due Process Clause of the Fourteenth Amendment obligates the

State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *Id.* at 31 (footnote omitted). Applying this principle in *McKesson*, the Court ruled that "Florida may satisfy this obligation through any form of relief, ranging from a refund of the excess taxes paid by petitioner to an offsetting charge to previously favored distributors, that will cure any unconstitutional discrimination against interstate commerce during the contested tax period." *Id.* at 51.

Taxpayers contend that, under *McKesson*, the state is required to provide relief that will put taxpayers in the position they would have been in absent a Commerce Clause violation. Because taxpayers have been deprived of the use of their funds during the years it has taken to obtain the refund, taxpayers maintain that the Commissioner must pay them interest. As taxpayers acknowledge, however, *McKesson* did not address the issue of interest on tax refunds. Moreover, no court has extended *McKesson* to require a state to pay such interest. Cf. *Chicago Freight Car Leasing Co. v. Limbach*, 584 N.E.2d 690, 694-95 (Ohio 1992) (*McKesson* "did not rule that the state's failure to pay interest on refunds of illegally collected taxes is a denial of due process"); *Pendell*, 847 P.2d at 850 ("lack of interest on refunds of taxes that were imposed by laws that this court invalidates does not violate taxpayers' due process rights under *McKesson*"). Consequently, we decline to extend *McKesson* to require payment of interest on tax refunds.

 Finally, taxpayers argue that this Court should order the Commissioner to pay interest on the tax refunds as a matter of state law under 32 V.S.A. § 8914 and V.R.C.P. 54(a). Section 8914 provides, "Any overpayment of [the purchase and use] tax as determined by the commissioner shall be refunded." The statute is silent with respect to interest; accordingly, no interest is due on the refunds. See *Library of Congress v. Shaw*, 478 U.S. 310, 317 (1986) (apart from constitutional requirements, in absence of specific provision by contract or statute, or express consent by Congress, interest does not run on claim against United States); *LaShay v. Department of Social & Rehab. Servs.*, 160 Vt. 60, 67, 625 A.2d 224, 228 (1993) (sovereign immunity protects state from suit unless immunity expressly waived by statute). Nor does V.R.C.P. 54(a) ("the amount of the judgment shall include the principal amount found to be due, [and] all interest accrued") require the state to pay interest absent an express waiver of immunity by the Legislature.

In view of the express intent of the Legislature that the Commissioner refund the motor vehicle use tax "without interest," 1993, No. 223 (Adj. Sess.), § 3, and absent any constitutional requirement for interest, the superior court correctly ruled that taxpayers are not entitled to interest on their tax refunds.

*Affirmed.*

**Morse, J.,** concurring. I concur in the Court's holding, but write separately to offer what I believe is the rationale for its ruling.

In *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990), the United States Supreme Court held that "the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *Id.* at 31 (footnote omitted). Thus, where Florida — in violation of the Commerce Clause — had applied preferential tax rates on locally grown agricultural crops, due process required that it provide a "'clear and certain remedy'" for the unlawful tax. *Id.* at 39 (quoting *Atchison, T. & S. F. Ry. v. O'Connor*, 223 U.S. 280, 285 (1912)). *McKesson* did not expressly consider whether that "remedy" required interest on tax refunds. But *McKesson* was not altogether silent on the subject of a state's obligation to provide relief for erroneous taxes, and its observations on this score strongly support the Legislature's decision here to refund the unlawful use tax without interest.

While firm in its decision that an unlawful tax required a "clear and certain remedy," the *McKesson* Court was equally clear that states retained considerable discretion in determining the exact nature and scope of the remedy to be provided. "[A] State found to have imposed an impermissibly discriminatory tax retains flexibility in responding to this determination," it observed. *Id.* at 39-40. Thus, Florida could satisfy its remedial obligation "through any form of relief, ranging from a refund of the excess taxes paid by petitioner to an offsetting charge to previously favored distributors, that will cure any unconstitutional discrimination." *Id.* at 51.

The high court further observed that "*state* interests traditionally have played, and may play, some role in shaping the contours of the relief that the State must provide to illegally or erroneously deprived taxpayers." *Id.* at 50 (emphasis added). "Financial stability" and "sound fiscal planning" were the primary state interests identified by the Court as playing a legitimate role in "shaping the contours" of the relief provided. *Id.* Allowing refunds only to those who pay under

protest and enacting short statutes of limitations applicable to refund actions were among the specific measures endorsed by the Court to mitigate the disruptive consequences of a tax invalidation. *Id.* Such procedural limitations, the Court explained, "would sufficiently protect States' fiscal security when weighed against their obligation to provide meaningful relief for their unconstitutional taxation." *Id.* The potentially confiscatory effect on the state's general fund also represented a legitimate state interest in shaping the contours of relief. "'[C]onserving scarce fiscal and administrative resources is a factor that must be weighed' when determining [the] precise contours of [the] process due." *Id.* at 51 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976)). A state's choice of relief might, for example, "entail various administrative costs (apart from the 'cost' of any refund itself)," and a state "may, of course, consider such costs when choosing" among the remedial options available. *Id.* at 50-51.

Considered in the light of these principles, the Legislature's decision to refund the vehicle use tax without interest typifies the kind of measured relief — achieved through a balancing of state and individual taxpayer interests — expressly endorsed in *McKesson*. The refund satisfied the constitutional mandate of a clear and certain remedy. The decision to limit the relief afforded by declining to pay interest was equally legitimate as a means of "conserving scarce fiscal and administrative resources." *Id.* at 51. As *McKesson* recognized, a state retains broad flexibility to shape the remedy provided in the light of fiscal reality; it need not blindly sacrifice the interest of the taxpaying public to the desires of a relative few aggrieved taxpayers. A refund of previously collected tax revenues places a particular strain upon the public fisc, not to mention the added cost of administering a tax refund program. The State here could thus validly determine to refund the collected taxes but spare the public the additional burden of interest on the refunds. Indeed, although not specifically denominated as such, the interest withheld by the State may constructively be thought of as a charge to recoup part of the costs of administration. "The State may, of course, consider such costs when choosing [among] the various avenues of relief open to it." *Id.*

Taxpayers' additional claim that the withholding of interest upon the tax refunds represents an unconstitutional "taking" under the Fifth Amendment is equally without merit. As noted, the Supreme Court has explicitly sanctioned certain state procedural mechanisms, such as payment-under-protest provisions and short statutes of limitations, that "could independently bar the taxpayers' refund

claim." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 756, 115 S. Ct. 1745, 1750 (1995); see *McKesson*, 496 U.S. at 45. It strains logic and credibility to conclude that the Supreme Court would expressly approve procedural provisions barring tax refunds altogether and simultaneously hold that the Fifth Amendment independently requires payment of accrued interest on the refunds.

Furthermore, recent takings jurisprudence makes clear that a violation of the Fifth Amendment requires a denial of "*all* economically beneficial uses" of the owner's property. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). Although the Supreme Court has recognized the theoretical possibility that a tax may be "so burdensome as properly to be characterized a taking," *Henderson Bridge Co. v. Henderson City*, 173 U.S. 592, 614 (1899), the withholding of interest on taxes subsequently held to be invalid does not begin to rise to the level of economic deprivation contemplated by the high court.

Finally, taxpayers' reliance on *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980), and *United States v. $277,000 U.S. Currency*, 69 F.3d 1491 (9th Cir. 1995), is fundamentally misplaced. In *Webb's*, the Court held that the state's withholding of interest on private funds deposited in court in an interpleader action was an unconstitutional taking. The Court explained that its holding was grounded in the "narrow circumstances of this case," 449 U.S. at 164, to wit, that a separate statute authorized a fee for services rendered based upon the amount of the principal deposited, that the "deposited fund itself concededly is private," *id.*, and that "[t]he usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal." *Id.* at 162. The circumstances here are totally dissimilar, involving not "concededly private" funds earmarked for ultimate redistribution to the private parties in the interpleader action before the court, but tax revenues levied by the state for public purposes.

The other case cited by taxpayers, *United States v. $277,000 U.S. Currency*, is even less apposite. There the court held that the claimant was entitled to interest on certain cash seized in a drug raid, not because its retention constituted a taking, but rather because the court had specifically ordered the money to be held in an interest-bearing account, and because of the government's prior handling of similar funds. 69 F.3d at 1494. "Such [interest], in accordance with the judge's order and past practice, become part of the *res*, to be returned

with the *res* to the claimant." *Id.* at 1496. No aspect of the court's decision purported to be based upon the constitutional requirement of just compensation.

For all of the foregoing reasons, therefore, I concur in the judgment. I am authorized to say that Justice Dooley joins in this concurrence.