PHILIP DEMORANVILLE[1] *vs.* COMMISSIONER OF REVENUE.

Suffolk. February 11, 2010. - June 3, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Taxation,* Income tax, Classification amendment, Capital gain, Abatement, Interest and penalties, Declaratory relief. *Constitutional Law,* Taxation. *Statute,* Validity. *Administrative Law,* Exhaustion of remedies. *Declaratory Relief. Practice, Civil,* Declaratory proceeding, Dismissal.

A Superior Court judge properly dismissed, for failure to exhaust administrative remedies, a civil complaint challenging the constitutionality of a State tax statute that authorized the abatement (without interest) of capital gains taxes levied in 2002, where the available administrative remedies were not seriously inadequate, in that, even if the Appellate Tax Board could not have declared the statute facially unconstitutional, it could have declared the statute unconstitutional or illegal as applied to the plaintiff, and could have awarded him interest; moreover, the judge did not abuse her discretion in concluding that the issues in the civil action were not sufficiently recurrent or of sufficient public importance to merit declaratory relief in light of the adequate administrative remedies proscribed and made exclusive by the Legislature. [34-38]

CIVIL ACTION commenced in the Superior Court Department on March 18, 2008.

A motion to dismiss was heard by *Judith Fabricant,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Philip N. Beauregard (Michael Franco* with him) for the plaintiff.

*Thomas A. Barnico,* Assistant Attorney General, for Commissioner of Revenue.

MARSHALL, C.J. The plaintiff, Philip DeMoranville, appeals from a decision of the Superior Court dismissing his challenge to the constitutionality of a State tax statute for failure to exhaust administrative remedies deemed "exclusive" by that act. St. 2005, c. 163, § 57B (*f*). In 2005, the Legislature enacted St.

---

[1] Individually and on behalf of all others similarly situated.

2005, c. 163, §§ 57, 57A, 57B (abatement act), which authorizes the abatement — without interest — of capital gains taxes levied in 2002, later held unconstitutional. See *Peterson* v. *Commissioner of Revenue*, 441 Mass. 420 (2004) (*Peterson I*); *Peterson* v. *Commissioner of Revenue*, 444 Mass. 128 (2005) (*Peterson II*). On March 18, 2008, DeMoranville, on his own behalf and on behalf of others similarly situated, brought an action for declaratory relief in the Superior Court asserting that the Legislature's determination that no interest was to be paid on the refund of the unconstitutional capital gains taxes is itself unconstitutional, and that he has not been "fully compensated" for his payment of the wrongful taxes.[2] He argues that he was in essence required to provide the Commonwealth "an interest-free loan" for the years in which taxpayers not subject to the increased tax rate had the opportunity to invest or otherwise use their funds. He further contends that his action for declaratory relief is proper because pursuit of administrative remedies would have been futile. A judge in the Superior Court allowed the Commissioner of Revenue's (commissioner's) motion to dismiss for failure to exhaust his administrative remedies. DeMoranville appealed, we granted his application for direct appellate review, and we now affirm.

1. *Background.* a. *Statutory overview.* This action is the third arising from the Legislature's taxation of capital gains in the revenue enhancement act of 2002 (2002 act). St. 2002, c. 186. In *Peterson I*, we held that § 32 of the 2002 act violated the uniformity requirement of art. 44 of the Amendments to the Massachusetts Constitution because it applied different tax rates to capital gains obtained within the same tax year. *Peterson I*, *supra* at 429.[3] Specifically, the 2002 act provided that long-term capital gains realized on or after May 1, 2002, were taxed as

---

[2]The complaint asserts claims for (1) declaratory judgment, (2) violation of art. 44 of the Amendments to the Massachusetts Constitution, (3) violation of the due process clauses of the State and Federal Constitutions, and (4) unjust enrichment.

[3]In *Peterson* v. *Commissioner of Revenue*, 441 Mass. 420, 421 (2004) (*Peterson I*), we concluded that, after allowable deductions and adjustments, the tax rate on long-term capital gains realized on or after May 1, 2002, became "higher than the tax rate on the same gain realized earlier in the year." Because "[o]nly one tax rate may be applied to all long-term capital gains realized in calendar year 2002," we held that the 2002 act violated the uniformity requirement of art. 44. *Id.* at 429.

ordinary income at 5.3 per cent, a rate higher than gains realized before May 1, 2002, which were subject to the prior taxation scheme. *Id.* at 421. See note 5, *infra.* The Legislature responded to *Peterson I* by enacting St. 2004, c. 149, §§ 413, 414 (2004 act). *Peterson II, supra* at 129. Section 414 of the 2004 act established January 1, 2002, as the effective date for the new capital gains tax rate, thereby curing the infirmity caused by the effective date of May 1 set forth in the 2002 act. Section 413 of the 2004 act, however, directed that the commissioner "not adjust the tax liability stemming from capital gains realized between January 1, 2002, and April 30, 2003, for any taxpayer who already paid capital gains taxes at the prior rates." *Id.* at 129. In *Peterson II*, we held that the 2004 act was unconstitutional because, in light of § 413, the 2004 act was "virtually identical" to the 2002 act and suffered from the same constitutional infirmity. *Id.* at 132. We struck § 413 but concluded that it was severable from § 414, thereby retaining January 1, 2002, as the effective date as provided in § 414. *Id.* at 130. We acknowledged that it was "within the Legislature's power to amend the Act yet again, if it wishes, to set the effective date at January 1, 2003." *Id.* at 141.

The Legislature again responded, this time enacting the abatement act at issue here. See St. 2005 c. 163, §§ 57, 57A, 57B. Sections 57 and 57A repealed § 413 of the 2004 act, and changed the effective date of the new tax rate from January 1, 2002, to January 1, 2003. Most relevant to this case is § 57B, which addresses the remedy for those taxpayers who had paid long-term capital gains taxes at the higher rate in 2002. The relevant provisions are reproduced in the margin.[4] In brief, § 57B provides that any taxpayer who overpaid capital gains

---

[4]Section 57B of St. 2005, c. 163, in relevant part, provides:

"Notwithstanding any general or special law to the contrary, to the extent that, as a result of the enactment of sections 57 and 57A, any taxpayer has overpaid tax due under chapter 62 of the General Laws with respect to long term capital gains recognized in taxable years beginning on or after January 1, 2002 and before January 1, 2003, the following provisions shall apply:

"(*a*) Such taxpayers may apply for abatement of the overpayment of tax on long-term capital gains for said taxable years pursuant to section 37 of chapter 62C of the General Laws, on or before June 30, 2006, within 3 years from the due date for such return, determined without

taxes may apply for an abatement pursuant to the administrative procedures set forth generally for tax abatements in G. L. c. 62C, § 37. *Id.* at § 57B (*a*). The commissioner is to abate any such overpayments in four annual instalments, substantially equal in amount, *without interest. Id.* at § 57B (*c*) and (*f*). This provides the "exclusive" basis for relief stemming from the overpayment of the capital gains taxes in 2002. *Id.* at § 57B (*f*).

b. *The plaintiff's action.* DeMoranville alleges that, in June of 2002, he sold a business that he had owned since 1975. Because of the 2002 act, DeMoranville alleges that he was required to pay $182,101 in capital gains taxes that he would not have been required to pay prior to the 2002 act.[5] Moreover, DeMoranville alleges that, because of the 2002 act, he paid higher taxes on

---

regard to extensions, within 2 years from the date of assessment or deemed assessment of such tax on long-term capital gains, or within 1 year of the date of payment of such tax on long-term capital gains, whichever is later.

"(*b*) The taxpayer must apply for such abatement upon the forms or in the manner determined by the commissioner of revenue and shall provide such documentation of the overpayment as the commissioner may require.

"(*c*) The commissioner shall abate any such overpayment in 4 annual installments, substantially equal in amount, without interest.

". . .

"(*f*) This section shall be the exclusive basis for any claim for refund of an overpayment of tax under chapter 62 of the General Laws with respect to long term capital gains recognized in taxable years beginning on or after January 1, 2002, and before January 1, 2003, and resulting from enactment of sections 57 and 57A of this act. No interest shall accrue or be payable with respect to such refunds, pursuant to section 40 of chapter 62C of the General Laws or otherwise."

[5]Prior to 2002, long-term capital gains were divided into six classes based on the length of time that the capital asset had been held prior to sale or exchange. *Peterson I, supra* at 421. "Capital gains taxes ranged from five per cent for capital assets held more than one year and up to two years, four per cent if held more than two years and up to three, and so on, with no tax on the gain from the sale or exchange of capital assets held more than six years. *Id.,* citing G. L. c. 62, § 2 (*b*) (3), as amended through St. 1994, c. 195, § 10, and G. L. c. 62, § 4, as amended through St. 1994, c. 195, § 20. Because De-Moranville had held the property for more than six years, he alleges that, had there been no change in the tax structure, he would have had no long-term capital gains tax to pay.

the capital gains from that sale than similarly situated taxpayers who realized long-term capital gains in 2002 before the May 1 effective date. Following the enactment of the abatement act, DeMoranville applied for an abatement, which the commissioner allowed. Pursuant to the statute, DeMoranville received four substantially equal annual instalments of the refund. He received no interest. Importantly, he does not claim that he requested interest in his application for abatement, that the commissioner ruled on any such request, or that he pursued any other administrative channels to obtain interest on the overpayment.[6]

2. *Propriety of declaratory relief.* We must first consider the appropriateness of declaratory relief. DeMoranville argues that the judge abused her discretion in dismissing his action for declaratory relief because pursuing the administrative remedies specified in the abatement act would have been futile and cause unnecessary expense and delay. We disagree.

"As a general rule, where an administrative procedure is available, we require a party seeking declaratory relief first to exhaust the opportunities for an administrative remedy." *Space Bldg. Corp.* v. *Commissioner of Revenue,* 413 Mass. 445, 448 (1992). Despite the fact that we are "generally reluctant to waive" this requirement, *DiStefano* v. *Commissioner of Revenue,* 394 Mass. 315, 320 (1985), we have held in tax cases that a declaratory action is "not ousted merely by the fact that the taxpayer has an administrative path to relief," and that "a judge in such a case may still exercise a discretion as to whether the action should be entertained." *Id.* at 319, quoting *S.J. Groves & Sons* v. *State Tax Comm'n,* 372 Mass. 140, 142 (1977). Unless the administrative remedy is "seriously inadequate," it should not be displaced by an action for a declaration. *Sydney* v. *Commissioner of Corps. & Taxation,* 371 Mass. 289, 294 (1976). Factors weighing in favor of maintaining a declaratory action

---

[6]The applicable limitations period for filing a claim with the commissioner pursuant to the abatement act has expired. See St. 2005, c. 163, § 57B (*a*) ("Such taxpayers may apply for abatement of the overpayment of tax on long-term capital gains for said taxable years pursuant to section 37 of chapter 62C of the General Laws, on or before June 30, 2006, within 3 years from the due date for such return, determined without regard to extensions, within 2 years from the date of assessment or deemed assessment of such tax on long-term capital gains, or within 1 year of the date of payment of such tax on long-term capital gains, whichever is later").

include "that the issue is important or novel or recurrent; that the decision will have public significance, affecting the interests of many besides the immediate litigants; or that the case reduces to an issue of law without dispute as to the facts." *Id.* at 295.

The parties here primarily dispute whether the administrative remedies specified in the statute were "seriously inadequate."[7] The abatement act provides that taxpayers aggrieved by over-payment of capital gains tax in 2002 are to follow the procedures set forth in G. L. c. 62C, § 37, which provides that a taxpayer must first "apply in writing to the commissioner . . . for an abatement. The commissioner may abate the tax if she "finds that the tax is excessive in amount or illegal." *Id.* If the request is denied, the taxpayer may appeal to the Appellate Tax Board (board), which hears the matter de novo and issues written findings. See G. L. c. 62C, § 39; G. L. c. 58A, § 13; *Space Bldg. Corp.* v. *Commissioner of Revenue, supra* at 451.[8] The

---

[7]The commissioner also argues that, because the abatement act states that the administrative remedies are the "exclusive" basis for a refund, and because the abatement act was passed "long after" the declaratory judgment act, G. L. c. 231A, the judge in the Superior Court could not exercise and should not have considered exercising her discretion to waive exhaustion of administrative remedies. According to this argument, the Legislature presumably was aware of the declaratory judgment act when it passed the abatement act, and intended the preclusion of any action for declaratory relief by making the administrative remedies "exclusive." This argument has some support in our cases. See *Madden* v. *State Tax Comm'n*, 333 Mass. 734, 736-737 (1956) (explaining that "exclusive" administrative remedies in G. L. c. 62, § 48, did not preclude declaratory relief because declaratory judgment act "was enacted long after" G. L. c. 62, § 48, and was "intended to create a new and additional remedy either previously unknown or but very slightly used"). In contrast, in *S.J. Groves & Sons* v. *State Tax Comm'n*, 372 Mass. 140, 142 (1977), this court held that the administrative remedies made "exclusive" by the Legislature in tax statutes enacted *after* the declaratory judgment act are not always preclusive of declaratory relief. Because historically we have permitted declaratory relief even in the face of tax statutes specifying that the administrative remedies were "exclusive," the court reasoned that the word "exclusive" in tax statutes enacted after the declaratory judgment act was not intended to exclude declaratory relief. *Id.* ("Before the enactment of the sales tax statute, declaratory relief was permitted in the face of a statute providing 'exclusive' remedies. E.g., *Madden* v. *State Tax Comm'n*, 333 Mass. 734, 736-737 [1956]. We do not think that the use of the word 'exclusive' in tax statutes enacted after that decision was intended to establish a contrary rule"). It was appropriate for the judge to consider exercising her discretion in this case.

[8]Decisions of the Appellate Tax Board in turn are subject to review by the Appeals Court and this court. G. L. c. 58A, § 13.

board may adjudicate disputes over interest. See *Fleet Nat'l Bank* v. *Commissioner of Revenue,* 448 Mass. 441, 446-447 (2007).

DeMoranville argues that bringing his case before the commissioner and the board would have been futile because neither has the authority to declare a statute unconstitutional. He contends that the authority of the commissioner and the board is limited by the language of the abatement act, which explicitly prohibits the commissioner from paying interest to taxpayers who paid the 2002 capital gains taxes later held unconstitutional. His view of the board is unduly constrained and inconsistent with our cases. The board previously has addressed constitutional claims and has ordered abatement on constitutional grounds, despite contrary statutory provisions, orders that we have upheld. See, e.g., *Lily Transp. Corp.* v. *Assessors of Medford,* 427 Mass. 228, 229 (1998) (affirming board's decision that assessment of motor vehicle excise tax did not violate taxpayer's constitutional rights); *Commissioner of Revenue* v. *Lonstein,* 406 Mass. 92, 92-93 (1989) (affirming board's decision that taxation scheme for interest from savings deposits violated art. 44).

We recently addressed the scope of authority of the board in *Duarte* v. *Commissioner of Revenue,* 451 Mass. 399 (2008), after the board invalidated a regulation promulgated by the commissioner as both inconsistent with the underlying statute and "constitutionally deficient." *Id.* at 406. We held that the board "lacks authority to declare regulations promulgated by the commissioner to be facially 'invalid and of no legal effect,' although it may find that their application in a case before it is violative of due process or inconsistent with the statutory purpose." *Id.* at 408. DeMoranville relies on *Duarte* to support his claim that the board could not have declared the abatement act unconstitutional for failure to provide interest. Even if the board could not have declared the abatement act facially unconstitutional, it could have declared the statute unconstitutional or "illegal," G. L. c. 62C, § 37, as applied to DeMoranville, and could have awarded him interest. See *Duarte* v. *Commissioner of Revenue, supra.* Accordingly, we agree with the judge in the Superior Court that the administrative remedies provided by the abatement act were not seriously inadequate.

DeMoranville further argues that, even if the board has author-

ity to award him interest, his case is appropriate for declaratory relief because this case involves an important, novel, and potentially recurrent issue, noting that we have not addressed for more than a century whether a taxpayer is entitled to interest on payment of an unconstitutional tax. See *Boott Cotton Mills* v. *Lowell*, 159 Mass. 383, 386 (1893). We cannot say, however, that the judge abused her discretion in evaluating these factors. The judge noted that the issues presented are "certainly important" and "may be novel,"[9] but she also reasoned that the issues "arise from a special act of the legislature that affects a particular group of taxpayers with respect to taxes paid for a single type of income in a single year." She therefore concluded that the issues were not sufficiently recurrent or of sufficient public importance to merit declaratory relief in the light of the adequate

[9]The decision in *Boott Cotton Mills* v. *Lowell*, 159 Mass. 383 (1893), recited the doctrine that "taxes illegally assessed may be recovered with interest from the time of payment if paid under protest, and from the time of demand if paid without protest." *Id.* at 386, citing *Boston & Sandwich Glass Co.* v. *Boston*, 4 Met. 181 (1842), and *Boston Water Power Co.* v. *Boston*, 9 Met. 199 (1845). The court explained that, in "such cases the tax is void; and the proceedings for its collection are without legal sanction, and the money paid is the property of the taxpayer of which the municipality has obtained wrongful possession." *Boott Cotton Mills* v. *Lowell*, *supra*. In that case we held that interest was not required because the plaintiff sought an abatement after having been "overrated," not because the tax was void. *Id.* See *Opinion of the Justices*, 356 Mass. 751, 754 (1969), citing *Boott Cotton Mills* v. *Lowell*, *supra* at 386-387 (advising that payment of interest on overpayment or refund due under statute is not constitutionally required).

Although several other States have addressed whether interest is constitutionally required, we have yet to reach this issue because *Boott Cotton Mills* v. *Lowell*, *supra*, and the cases on which it relied, did not explicate whether interest was constitutionally required or was awarded as a matter of common law. See, e.g., *In re Williams*, 166 Vt. 21, 23-24 (1996), cert. denied sub nom. *Christensen* v. *Griffes*, 520 U.S. 1264 (1997), quoting *McKesson Corp.* v. *Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 31 (1990) (*McKesson*) (Legislature's decision to refund unconstitutionally collected tax without interest was not violation of takings clause of Fifth Amendment to United States Constitution or due process clause of Fourteenth Amendment to United States Constitution, which requires State to "provide meaningful backward-looking relief to rectify any unconstitutional deprivation"). See also *Chicago Freight Car Leasing Co.* v. *Limbach*, 62 Ohio St. 3d 489, 493-494 (1992) ("lack of interest on refunds of taxes that were imposed by laws that [the State Supreme] court invalidates does not violate taxpayers' due process rights under *McKesson*"); *Pendell* v. *Department of Revenue*, 315 Or. 608, 614 (1993) (same).

administrative remedies proscribed — and made "exclusive" — by the Legislature. There was no abuse of discretion.[10]

*Judgment affirmed.*

---

[10]The commissioner argues in the alternative that the case should be dismissed for failure to present an "actual controversy" required for our grant of declaratory relief under G. L. c. 231A, § 1. She explains that, although we may grant declaratory relief in tax cases, we do not have the authority to order an abatement or issue an award of money damages against the commissioner. See *Perini Corp.* v. *Commissioner of Revenue,* 419 Mass. 763, 764 n.1 (1995); *Space Bldg. Corp.* v. *Commissioner of Revenue,* 413 Mass. 445, 446 n.1 (1992). Because DeMoranville failed to request interest from the commissioner, and because the statutory period for that request has now elapsed, see note 6, *supra,* the commissioner argues that, even were we to grant DeMoranville declaratory relief, he would be unable to invoke his favorable declaration in support of an application for interest before the commissioner. St. 2005, c. 163, § 57B (*a*). Because we decide this case in favor of the commissioner on other grounds, we decline to reach this argument.